OLBRICH, APPELLEE, *v.* SHELBY MUTUAL INSURANCE COMPANY, APPELLANT.

(No. CA-8111—Decided December 27, 1983.)

*Messrs. Lindhorst & Dreidame* and *Mr. J. Roger Blust,* for appellee.

*Messrs. Jenks & Myers Co., L.P.A.,* and *Mr. Robert J. Surdyk,* for appellant.

KERNS, J. The setting for this case was in the Bahama Islands, but the actual confrontation was in the Dayton Municipal Court. On April 11, 1981, plaintiff-appellee, Guenther Olbrich, had completed his vacation and was preparing to leave the Bahamas for Cincinnati, Ohio. Along with others, he placed his suitcase outside the Club Mediterranee for transportation by air to Miami, Florida. Upon arrival in Miami, Olbrich was unable to locate the suitcase, and it was not thereafter found by the airline or anyone else.

At the time of the disappearance of the suitcase, the plaintiff carried a homeowners insurance policy with defendant-appellant, Shelby Mutual Insurance Company, which insured him against the "loss of property from a known place when it is likely that theft occurred." Upon returning to Ohio, Olbrich notified his insurer of the loss.

At that point, a lengthy exchange of communications began. On April 29, 1981, Shelby Mutual requested a written report from Olbrich as to where and how the items were stolen as well as a description of the property with costs and proof of purchase. The insurance company also notified the insured to resubmit his list of stolen items if he was not satisfied after settling the claim with the airline.

On April 7, 1981, Olbrich submitted the list, as requested, and noted that the total value of the contents of the suitcase, including a camera valued at $1,070, was $2,767. Then, on May 14, 1981, Shelby Mutual again notified Mr. Olbrich that consideration of his claim was dependent upon finalization of his claim against the airline, and that only after his settlement with the airline could the luggage be presumed stolen and thereby fall within the ambit of his coverage.

On June 17, 1981, an attorney retained by the insured sent a letter to Shelby Mutual notifying the company that the Bahama Police Department had been contacted with reference to this missing suitcase. In the same communication, Olbrich also notified Shelby Mutual that the lost or stolen camera was worth $3,100 rather than $1,070. However, on June 22, 1981, Shelby Mutual again requested information from Olbrich as to his claim against the airline.

On February 11, 1982, Olbrich's attorney notified the insurer that the airline had paid $272.10 and that the hotel had paid $1,248.50 toward the loss of the suit-

case. In the same letter, counsel also reminded Shelby Mutual that the itemized breakdown of the property contained in the suitcase showed a loss of $2,767, thus leaving a balance due from Shelby Mutual in the amount of $1,246.40.

On February 17, 1982, Shelby Mutual notified Olbrich that his letter of February 11, 1982 came as "quite a surprise," after seven months, and that his file had been closed, thus necessitating another complete breakdown of the loss as well as any copies of releases given to the airline and hotel.

On March 4, 1982, the insured forwarded copies of the releases to the insurer along with another list of the missing items with their valuations. In the same letter, Olbrich expressed concern that the terms of the insurance policy required any court action to be initiated within one year.

On March 8, 1982, Shelby Mutual directed another letter to Olbrich, which noted the possibility that the insured had waived his right to recover by signing releases which jeopardized the subrogation rights of Shelby Mutual, and in the same communication, the insurer admonished the insured that "you have signed releases against the party who supposedly lost the suitcase, and actually, if we are considering it lost, we really can't assume it was stolen, which is part of the coverage of our policy." Then, in the concluding paragraph of the same letter, Shelby Mutual requested further information about the settlement with the other parties along with some reason why the airline and the hotel did not honor the entire claim.

On March 25, 1982, plaintiff commenced this action in the Dayton Municipal Court seeking compensatory and punitive damages, as well as attorney fees, from defendant, Shelby Mutual. The cause came on for hearing without the intervention of a jury on August 19, 1982. Thereafter, the trial court rendered a written decision wherein it found that plaintiff was entitled to compensatory damages in the amount of $848.50, punitive damages in the amount of $1,000, and attorney fees in the amount of $1,000, and from the judgment thereupon entered in the Dayton Municipal Court, Shelby Mutual has appealed to this court.

The first of three assignments of error has been framed as follows:

"1. It was against the manifest weight of the evidence for the trial court to award punitive damages to the appellee since the appellant's conduct in handling the appellee's claim did not involve fraud, malice, insult or a wanton and/or reckless disregard for the appellee's rights."

In this case, the complaint was based essentially upon the breach of an insurance contract, and, ordinarily, the breach of a contractual duty does not give rise to punitive damages. *Ketcham* v. *Miller* (1922), 104 Ohio St. 372. However, where the acts constituting the breach of contract are totally unreasonable and oppressive, an award of punitive damages may be made. *Sweet* v. *Grange Mut. Cas. Co.* (1975), 50 Ohio App. 2d 401 [4 O.O.3d 399].

In the recent case of *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, paragraph two of the syllabus, the Supreme Court reiterated the rule that "[p]unitive damages may be recovered against an insurer who breaches his duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer," and in so doing, the court relied upon its previous language in *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178 [71 O.O.2d 174], where the court discussed the type of malice necessary to support a claim for punitive damages as follows:

"Actual malice was defined in one punitive damages case as ' "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." * * *'

"Appellants assert in their sole proposition of law that 'intentional, reckless, wanton, wilful and gross acts which cause injury to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions.' This broad statement is also correct; actual malice may be inferred from conduct and surrounding circumstances."

In the present case, Olbrich relies for support upon such cases as *Sweet* v. *Grange Mut. Cas. Co.* (1975), 50 Ohio App. 2d 401 [4 O.O.3d 399] and *Kirk* v. *Safeco Ins. Co.* (1970), 28 Ohio Misc. 44 [57 O.O.2d 49], but the extreme conduct reflected by the facts of those cases cannot be reconciled with the conduct leading to the instant action. In fact, the trial court, in its written decision, expressly found that Shelby Mutual's conduct "does not rise to the level of the malicious conduct in *Kirk* and *Sweet.*"

With the view to the facts and circumstances in these proceedings, it perhaps should be pointed out with some particularity that it is not a tort in Ohio to breach a contract (*Ketcham* v. *Miller* [1922], 104 Ohio St. 372), and the mere fact that an insurer refuses to settle a claim within a reasonable time does not necessarily engender tort liability. *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185 [39 O.O. 465]. In order to justify punitive damages, the insured must show that the refusal to complete a settlement emanated from bad faith, and "bad faith" has been defined by the Supreme Court of Ohio in *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420], paragraph two of the syllabus, as follows:

"* * * bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

Where an insurance policy is involved, the unequal bargaining positions of the parties should be a prime consideration in determining the availability of punitive damages, *Battista* v. *Lebanon Trotting Assn.* (C.A. 6, 1976), 538 F. 2d 111, but here, the evidence submitted by the insured was insufficient to show anything more than extreme caution on the part of the insurer. In this regard, it is significant that Shelby Mutual did not refuse to pay the claim, but only questioned its validity. In consideration of the discrepancies as to the value of the camera, which the trial court later found from the evidence to be worth $150, the delay in payment was apparently not without some justification. Furthermore, the record shows that the insured was reluctant to provide complete information as to the previous settlements with other insurers, and nothing appears to suggest that the request for such information, as necessary to show a probable theft, was attended by any bad faith or malice. Until the airline and/or the hotel honored the appellee's claim, the circumspectness exercised by the insurer was reasonable, and at no time did the insured explain why the hotel did not pay for the entire loss. Under such circumstances, and after examining the factual patterns of numerous other cases, we are convinced that this record does not portray sufficient "proof of actual malice, fraud, or insult on the part of the insurer" (*Hoskins* v. *Aetna Life Ins. Co., supra*) to support an award of punitive damages in an action based upon breach of contract. Hence, the first assignment of error is well-made.

The second assignment of error, which is directed to the nature of the evidence presented to support the claim for compensatory damages, has been set forth by the appellant as follows:

"2. The court erred to the detriment of the appellant when it ruled that the actions of the appellee did not breach the terms of the policy of insurance issued to him by the appellant."

The evidence bearing upon this alleged error was discussed at some length by the Dayton Municipal Court in its written decision, and the state of the evidence is such as to preclude any interference by this court with the expressed finding "that plaintiff substantially complied with the provisions of the insurance policy." It is fundamental, of course, that findings supported by some credible evidence cannot be set aside by a reviewing court (*C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]), and the second assignment of error is overruled.

The third assignment of error, which alludes to matters which were not specifically presented by Shelby Mutual and decided by the trial court, likewise must be overruled. An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98]; *State* v. *Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215]; *State* v. *Davis* (1964), 1 Ohio St. 2d 28 [30 O.O.2d 16]; *State* v. *Driscoll* (1922), 106 Ohio St. 33. Furthermore, this alleged error, even if properly before this court, would appear to be without merit.

Ordinarily, if punitive damages are allowable, the aggrieved party may also recover reasonable attorney fees. *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178 [71 O.O.2d 174]; *Roberts* v. *Mason* (1859), 10 Ohio St. 278. However, if punitive damages are not proper, attorney fees may not be allowed. *Ali* v. *Jefferson Ins. Co.* (1982), 5 Ohio App. 3d 105. Accordingly, the award of punitive damages and allowance for attorney fees in this case must be set aside, but as so modified, the judgment, as it pertains to compensatory damages in the amount of $848.50, will be affirmed.

*Judgment accordingly.*

BROGAN, P.J., and ZIEGEL, J., concur.

ZIEGEL, J., retired, of the Preble County Court of Common Pleas, sitting by assignment in the Second Appellate District.