HENLEY, Senior Circuit Judge.
Basil Y. Hicks, Jr., the bankruptcy trustee and the appellee, sued Capitol American Life Insurance Company, the insurance principal and the appellant, alleging contract and tort liability for breach of an insurance sales marketing (commissions) agreement between Robert M. Lamb, Jr., the bankrupt debtor, and appellant. The jury awarded Lamb $108,627.00 and the court awarded costs and pre-judgment interest. Appellant essentially argues that the district court erred when it permitted the issue and related evidence of Lamb’s bankruptcy to go to the jury as an item of special consequential contract damages. In addition, appellant alleges the district court committed plain error in allowing testimony that the loss incurred by Lamb due to the bankruptcy included the difference between the future value and discounted value of a note he held. Appellee cross-appeals objecting to the district court’s dismissal of his tort claim and rejection of his punitive damage instructions. We affirm as to the claims on cross-appeal but reverse as to damages.
Lamb sold insurance for a local agency under a written marketing agreement with the appellant. Upon his voluntary termination of the principal-agent relationship in 1986, Lamb sought payment of his vested but unpaid renewal commissions. The agreement provided for payment of these commissions even in the event of termination. Appellant failed to pay the commissions to Lamb, paying them instead to the local insurance agency he had worked for while the agreement was in force. Ap *893 parently, appellant believed Lamb had breached the contract by tortiously interfering with it through attempts to recruit agents away from appellant and the local insurance agency.
In 1988, Lamb filed for Chapter 7 bankruptcy and his debts were discharged. In 1989 the trustee sued appellant alleging both contract and tort claims, and requested compensatory and punitive damages. In particular, appellee alleged appellant’s failure to pay the renewal commissions caused Lamb’s bankruptcy and he requested special consequential damages for certain losses incurred in bankruptcy. Evidence of over $150,000.00 in damages was presented, including unpaid renewal commissions of $31,433.06, losses on two houses liquidated in bankruptcy amounting to $34,202.94, attorney’s fees and costs billed of $11,768.35 for the bankruptcy and related state court litigation, and the loss on the note sold at a discount. Lamb testified that the amount of the loss on the note was $77,374.18, the difference between the note’s discounted value of $15,285.00 and the total of all future payments of principal and interest amounting to $92,652.18.
Appellant specifically objected to the admission of the evidence of loss on the note but the district court reserved judgment on its admission until all evidence had been presented. Prior to instructing the jury, the district court decided the jury should be able to consider the evidence of special consequential damages, including the evidence of loss on the note, but dismissed appellee’s tort claim and claim for punitive damages. The judge instructed the jury to consider the “actual loss resulting from breach of the contract” and the amount of loss “resulting in a natural and usual way from the breach of contract, or as reasonably within the contemplation of both Lamb and the defendant at the time the contract was made, as a probable result of the breach.”
The jury found appellant liable for breach of contract and rendered a general damage award in the amount of $108,-627.00. The court additionally awarded pre-judgment interest of $7,572.12 and costs of $1,940.55. Appellant moved for a new trial but was denied. The district court could not conclude “that the amount awarded by the jury was not supported by substantial evidence in the record,” even though the court stated it would not have awarded as large a sum.
The parties explicitly provided in the marketing agreement that their choice of law for disputes related to the contract was Ohio, the state where appellant is domiciled. The district court submitted appel-lee’s contract claim to the jury, applied Ohio substantive law and utilized Ohio jury instructions. We conclude, and the parties have not suggested otherwise, that the federal district court, located in Arkansas and sitting in diversity, applied the choice of law rules of the forum state and properly honored the parties’ choice of Ohio law. Aetna Life Ins. Co. v. Great Nat’l Corp., 818 F.2d 19, 20 (8th Cir.1987).
A. Appellant’s Claims
Appellant raises two points of error. First, appellant argues that the issue of special consequential damages should not have gone to the jury, and thus the district court erred in not directing a verdict. Second, appellant alleges it was plain error for the district court to admit the testimony regarding loss on the note.
As to the standard of review on appellant’s first point of error, our analysis is two-pronged. First, we must decide whether such damages are even properly before the jury as a matter of law. Second, as to the facts supporting the damages, we apply the familiar principle that an “appellate court may not substitute its view of the facts for that of the trier of fact unless it is in a position to hold that reasonable minds, viewing the evidence in the light most favorable to the prevailing party, could only have found otherwise than the trier of fact.” McIntyre v. Everest & Jennings, Inc., 575 F.2d 155, 158 (8th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978). Appellant also moved for a new trial, the denial of which we evaluate under the abuse of discretion *894 standard. McBryde v. Carey Lumber Co., 819 F.2d 185, 188 (8th Cir.1987).
The parties disagree as to our standard of review on the second point of error. The question is whether we should apply the "substantial evidence to support the verdict" or the "sufficiency of the evidence" standard. As the claim has been characterized and discussed in the briefs, we view the issue as whether the evidence of loss on the note was legally sufficient to go to the jury, thus making our review de novo. Id.
As to appellant's first point, we must look at Ohio law to see whether consequential damages are appropriate and to what extent. We find that Ohio follows the common law tradition articulated in Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), that the damages recoverable include those arising naturally or in the usual course from the breach of contract, or that are the probable result of the breach and within the reasonable contemplation of both parties at the time the contract was made. Markowitz & Co. v. Toledo Metro. Hous. Auth., 608 F.2d 699, 707 (6th Cir.1979) (applying Ohio law). Arkansas authority is consistent with this position, Southwestern Bell Tel. Co. v. Norwood, 212 Ark. 763, 207 S.W.2d 733, 734 (Ark.1948), and thus no conflict of laws issue arises. Olin Water Servs. v. Midland Research Labs, Inc., 596 F.Supp. 412 (E.D.Ark.1984), appeal dismissed, 774 F.2d 303 (8th Cir.1985).
Concluding that consequential damages are thus available as a matter of law, we must next consider whether there was a factual issue for the jury. The key factual dispute is whether Lamb's special damages either flowed naturally from the nonpayment of commissions or were contemplated by the parties as a probable result of the breach at the time of contracting. Appel-lee put on evidence suggesting a natural course of events from the time appellant refused to pay commissions until the filing )f bankruptcy. Appellee also points to language in the marketing agreement in support of what the parties contemplated that states the principal will not be liable for any damages for delays in paying commis sions "while it is ascertaining the validity of any transfer of the REPRESENTATIVE'S right to receive commission." Ap-pellee alleges that this places both an affirmative duty on the principal to "ascertain" and only protects it from damages resulting from delays in paying the commissions if it does so. Appellee argued at the trial that appellant performed no investigation aimed at ascertaining the validity of Lamb's transfer and thus breached the contract and lost the protection of the damage limitation provision.
Viewing the evidence favorably to the prevailing party, we cannot say that a reasonable trier of fact "could only have found otherwise than the trier of fact" in this case as to whether there was an issue for the jury on consequential damages. McIntyre, 575 F.2d at 158. We also cannot say that submitting the consequential damages issue to the jury caused a miscarriage of justice or that the district court abused its discretion by refusing to grant a new trial. McBryde, 819 F.2d at 188. The district court used Ohio approved jury instructions for all contract issues submitted to the jury.
However, as to appellant's second point, we conclude it was error for the district court to admit the evidence it did as to loss from the note. The district court conditionally permitted the testimony of Lamb, over the objection of appellant, that his loss on the note was equal to the future value of all payments to be received under the contract, less the discounted value he received from the note during bankruptcy. The original principal value of the note was $35,788.70, the future value of all payments was $92,652.18 and the discounted amount received by Lamb was $15,285.00. The loss was asserted to be $77,374.18. This assertion flies in the face of fundamental principles of finance and accounting.
The damages normally recoverable on a note or instrument are the unpaid principal amount of the instrument plus interest since the date of breach. See Di *895 versified Communications, Inc. v. Wyandot Ind., Inc., 16 Ohio App.3d 220, 475 N.E.2d 179, 181 (Ohio Ct.App.1984); Mid-State Homes, Inc. v. Knight, 237 Ark. 802, 376. S.W.2d 556 (Ark.1964) (verdict for unaccrued interest on note not permitted). This rule flows logically from the basic finance principle that a dollar today is worth more than a dollar tomorrow. The discounted value of the note represents its market worth today, whereas the total future payment stream considers interest in addition to principal earned in the future. It would be inappropriate to award damages today based on unearned future interest. Ohio recognizes there may be certain exceptions to the rule, Diversified Communications, 475 N.E.2d at 181, but none were argued and the district court suggested none applicable to the present case. Thus, no more than the principal amount less the discounted value received, or a difference of $20,503.70, plus interest since the breach, would be an appropriate measure of loss.
Had the jury verdict been specific, we might otherwise reduce the damage award or remand only on the issue of the amount of loss on the note. However, the verdict was general and we must presume that any and all issues were decided in favor of the prevailing party. Keet v. Service Mach. Co., 472 F.2d 138, 140 (6th Cir.1972) (applying Ohio law); Carrigan v. Nichols, 148 Ark. 336, 230 S.W. 9 (Ark.1921). It is reasonable to apply this rule in the present case because without awarding any damages for the loss of the note, the total damages on which evidence was admitted only amounted to $77,404.35. The total damage award from the jury was $108,627.00, leaving a minimum difference attributable to the note of $31,222.65. As we stated, absent special circumstances, the maximum damage amount available for the note before adding interest is $20,-503.70.
This means that, at a minimum, the jury awarded $10,718.95 too much for the note; it could have been more since, for all we know, the jury awarded in substance both the commissions and the full loss claimed on the note, which total is just a little more than the actual amount of damages awarded. In any event, the jury awarded some but not all the damages requested and we have no way of determining what was included. We cannot assume any particular scenario and we would not otherwise be inclined to do so since the largest single element of damages argued was the loss on the note. We therefore find error in the damage award and must remand for a new trial on the issue of damages. We note as well that certain collateral issues, including the post-argument claim raised by appellant that appellee concealed assets during bankruptcy and committed fraud on the court, may need to be addressed.
B. Appellee’s Claims
The appellee argues the court erred in dismissing its tort claim and claim for punitive damages. Based on our review of the record, we cannot say the district court abused its discretion in dismissing those claims. It is not necessarily a tort to breach a contract. Olbrich v. Shelby Mut. Ins. Co., 13 Ohio App.3d 423, 469 N.E.2d 892, 895 (Ohio Ct.App.1983). Although the trend in many states is to allow tort suits against insurance companies for bad faith failure to pay claims, e.g., id., we are aware of no such trend in cases involving failure to pay commissions to former agents. The district court concluded the claims alleged sounded purely in contract, not in tort.
The district court also concluded the evidence was insufficient to establish the mental state necessary to support the imposition of punitive damages. This ruling is consistent with the dismissal of the tort claim, because punitive damages are not usually recoverable in a lawsuit solely based on breach of contract, even if the breach is wilful, wanton and malicious. Canderm Pharmacal v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 602 (6th Cir.1988) (applying Ohio law). This is not to say that a breach of contract might not itself rise to the level of a tort, but once the court concludes there was no tort, no punitive damages are available. Therefore, we *896 find no reversible error regarding the issues on cross-appeal.
In sum, we reverse the jury’s award of damages and remand this cause to the district court for a new trial on the issue of contract damages only, leaving to its sound discretion the consideration and resolution of any related collateral issues not inconsistent with this opinion. On cross-appeal the judgment of the district court is affirmed.