JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs Castle Hill Holdings V, VI, VII, and VIII appeal from the orders of the trial court that entered judgment in favor of defendants Al Hut, Inc., et al. For the reasons set forth below, we affirm the judgment of the trial court as to the dismissal of the first, third, fifth and seventh claims for relief and we reverse and remand as to the fourth, sixth and eighth claims for relief.
 {¶ 2} Plaintiffs originally filed this action on April 10, 2001. It was subsequently re-filed on December 18, 2003. Plaintiffs Castle Hill Holdings V, VI, VII and VIII (collectively referred to as "Castle Hill") asserted eight claims for relief against nine individuals or entities in connection with agreements associated with Pizza Hut Restaurants.
 {¶ 3} In relevant part, Castle Hill alleged that between 1995 and 1997, it leased various parcels of land from CNL American Properties, Inc. ("CNL") pursuant to an agreement by which Castle Hill was to eventually acquire the parcels and appurtenant buildings. In 1996 and 1997, Castle Hill VII and Castle Hill VIII subleased various parcels to Midland II and Midland III, pursuant to twenty-year "Restaurant Lease" Agreements. Castle Hill further alleged that Midland II and Midland III subsequently breached the Restaurant Lease Agreements (subleases) and that as a result of such breaches, Castle Hill was in turn unable to meet its obligations to CNL and lost all rights in the parcels.
 {¶ 4} Castle Hill additionally alleged that in 1998 non-parties Pizza Hut, Inc., Midland I, and Midland I Officer Ronald Saverin entered into a Resolution of Default Agreement with Castle Hill and others. Pursuant to this agreement, Midland I's creditors took over ownership of Midland I and Castle Hill consented to certain assignments of the Restaurant Leases (subleases) in exchange for reciprocal releases and continuations of the lease terms. Midland I's creditors later assigned their interests in the Resolution of Default Agreements to defendant Al Hut Inc. which entity later initiated litigation in Delaware to invalidate the Restaurant Leases.
 {¶ 5} In the first claim for relief, Castle Hill VII alleged that Al Hut, Inc., Shepards, Great Lakes II and III, Clearwater, Flocken and Hudson (collectively referred to as the "non-Midland defendants") were liable for tortious interference with the Restaurant Leases.
 {¶ 6} In the second claim for relief, Castle Hill VII alleged that Midland II and III defendants breached the Restaurant Leases (subleases).
 {¶ 7} In the third claim for relief, Castle Hill VIII alleged that the non-Midland defendants were liable for tortious interference with the Restaurant Leases.
 {¶ 8} In the fourth claim for relief Castle Hill VIII alleged that Midland II and III had breached the Restaurant Leases.
 {¶ 9} In the fifth claim for relief, Castle Hill VII alleged that all of the defendants were liable for tortious interference with its prospective business opportunities as the breach of the Restaurant Leases (subleases) caused Castle Hill to default on its obligations to CNL and to lose all interest in the parcels.
 {¶ 10} In the sixth claim for relief, Castle Hill V and Castle Hill VI alleged that defendant Al Hut, Inc. breached its obligations under the Resolution Agreement.
 {¶ 11} In the seventh claim, Castle Hill V-VII alleged that the non-Midland defendants were liable for tortious interference with the Resolution Agreement.
 {¶ 12} In the eighth claim for relief, Castle Hill V-VII alleged that the Midland defendants breached the Resolution Agreement.
 {¶ 13} Midland II and III moved for summary judgment and argued that the second claim for relief, i.e., in which Castle Hill VII claimed that Midland II and Midland III breached the Restaurant Leases (subleases) was duplicative of other litigation in which Castle Hill VII had been awarded approximately twenty-one million dollars. See Castle Hill Holdings VII LLC v.Midland Food Services II, LLC, Tuscarawas App. No. 2004AP060044,2005-Ohio-1773.
 {¶ 14} In addition, defendants argued that they were entitled to judgment as a matter of law of the second claim for relief, i.e., in which Castle Hill VIII claimed that Midland II and III breached the Restaurant Leases (subleases) because Castle Hill VIII did not produce the agreement and "cannot even prove the existence of a contract."
 {¶ 15} The defendants also filed a motion to dismiss claims one, three, and five through eight for failure to state claims for relief.
 {¶ 16} On April 25, 2005, the trial court dismissed claims one, three, and five through eight for failure to state a claim. On this same date, the court awarded defendants Midland II and Midland III summary judgment on claim four, and plaintiffs later dismissed the second claim without prejudice.
 {¶ 17} Castle Hill now appeals and assigns three errors for our review.
 {¶ 18} Within its first assignment of error, Castle Hill asserts that the trial court erred in awarding summary judgment to Midland II and Midland III as Castle Hill was permitted to show the contents of the Lease Agreement through other secondary evidence. Within the second and third assignments of error, Castle Hill asserts that the trial court erred in dismissing the remaining claims for relief pursuant to Civ.R. 12(B)(6).
 A. Summary Judgment (Fourth Claim for Relief) {¶ 19} We employ a de novo review in determining whether summary judgment was properly granted. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241;Zemcik v. La Pine Truck Sales Equip. Co. (1997),124 Ohio App.3d 581, 585, 706 N.E.2d 860.
 {¶ 20} Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Civ.R. 56(C);State ex rel. Dussell v. Lakewood Police Dept.,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, 791 N.E.2d 456, citing State exrel. Diogenes v. Ohio Adult Parole Auth., 77 Ohio St.3d 190,191, 1996-Ohio-326, 672 N.E.2d 654.
 {¶ 21} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389,696 N.E.2d 201. Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197.
 {¶ 22} The essential elements of a cause of action for breach of contract are: the existence of a contract; performance by the plaintiff; breach by the defendant; and resulting damage to the plaintiff. Powell v. Grant Med. Ctr., 148 Ohio App.3d 1, 10, 2002-Ohio-443, 771 N.E.2d 874, quoting Nilavar v. Osborn
(2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271. See, also,Nious v. Griffin Construction, Inc., Franklin App. No. 03AP-980, 2004-Ohio-4103.
 {¶ 23} Civ.R. 10(D) provides, in relevant part:
 {¶ 24} "When any claim * * * is founded on an account or other written instrument, a copy thereof must be attached to the pleading. If not so attached, the reason for the omission must be stated in the pleading."
 {¶ 25} Civ.R. 10(D) does not expressly require the dismissal of a complaint which does not comply with the rule, and such defects may be cured by less drastic means. See Point Rental Co.v. Posani (1976), 52 Ohio App.2d 183, 368 N.E.2d 1267. See, also, Ferguson v. Rolland (October 25, 1999) Mahoning App. No. 98-CA-199; Meikle v. The Edward J. Debartolo Corp. (Nov. 7, 2001), Mahoning App. No. 00-CA-58; Lorain Music Co. v. Eidt,
Crawford App. No. 3-2000-17, 2000-Ohio-1799.
 {¶ 26} Courts have repeatedly held that when a plaintiff fails to attach a copy of a written instrument to his complaint, the proper method to challenge such failure is by filing a Civ.R. 12(E) motion for a more definite statement. See Schwartz v. BankOne, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 812, fn 4,619 N.E.2d 10; Point Rental Co. v. Posani, supra.
 {¶ 27} In Point Rental Co. v. Posani the Tenth District Court of Appeals stated:
 {¶ 28} "The proper procedure in attacking the failure of a plaintiff to attach a copy of a written instrument or to state a valid reason for his failure to attach same is to serve a motion for a definite statement, pursuant to Civ.R. 12(E). Had that motion been granted, as would have been proper in this case, plaintiff could properly have been required to amend his complaint within 14 days after notice of the order sustaining the motion for a definite statement, and ordered to attach a copy of the written instrument or state a valid reason for the failure to attach same. In the event a party fails to obey the order of the court, the court may strike the pleading to which the motion was directed, or make any other orders as it deems just, which would include involuntary dismissal with prejudice pursuant to Civ.R. 41(B)(1)." Id. at 186; see, also, Clerac, Inc. v. Shiekh (May 14, 1998), Cuyahoga App. No. 72731; Landskroner v. Landskroner,154 Ohio App.3d 471; 2003-Ohio-5077; 797 N.E.2d 1002.
 {¶ 29} A defendant who fails to file a Civ.R. 12(E) motion before filing his answer has been held to have waived his right to assert Civ.R. 10(D) as a basis for dismissing the plaintiff's complaint. Glenwood Homes, Ltd. v. State Auto Mut. Ins. Co.
(Oct. 1, 1998), Cuyahoga App. No. 7285; Lorain Music Co. v.Eidt, supra; Bomanite Designs, Inc. v. LeBail (Oct. 26, 1990), Lake App. No. 89-L-14-139; Phillips v. Fishel (Jan. 28, 1983), Lake App. No. 9-041.
 {¶ 30} Finally, we note that in order to prove the contents of a writing, the "best evidence rule" requires that the actual document, or an exact duplicate thereof, be introduced.
 {¶ 31} In accordance with Evid. R. 1002:
 {¶ 32} "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."
 {¶ 33} Ohio Evid. R. 1004 sets forth an exception and states as follows:
 {¶ 34} "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
 {¶ 35} "(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
 {¶ 36} "(2) Original not obtainable. No original can be obtained by any available judicial process or procedure * * * *."
 {¶ 37} Moreover, where the parties are disputing whether a written contract ever existed this question is properly submitted to the jury for resolution. Copeland v. Custom Craft Builders
(March 7, 1991), Cuyahoga App. No. 58075. The Copeland Court explained:
 {¶ 38} "[W]here an issue is raised as to whether the asserted writing ever existed, Evid. R. 1008 is implicated, as this rule provides:
 {¶ 39} "`When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of Rule 104. However, when an issue is raised (a) whether the asserted writing ever existed, or (b) whether another writing, recording, or photograph produced at the trial is the original, or (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact.'"
 {¶ 40} Applying the foregoing, we hold that Castle Hill VIII was required to attach a copy of the Restaurant Lease to its complaint but defendants did not file a motion for a more definite statement under Civ.R. 12(E) so Civ.R. 10(D) was not a proper basis for dismissal. Moreover, Castle Hill VIII could present secondary evidence to establish the contents of the Restaurant Lease pursuant to Evid.R. 1004. Finally, inasmuch as defendants are disputing whether a written contract ever existed, such question is properly submitted to the jury under Evid.R. 1008.
 {¶ 41} In accordance with the foregoing, we conclude that the trial court erred in awarding defendants summary judgment on the fourth claim for relief, upon Castle Hill VIII's failure to attach a written copy of the Restaurant Lease to the complaint. This assignment of error is well-taken.
 B. Failure to State a Claim (First, Third, and Fifth though Eighth Claims for Relief) {¶ 42} In reviewing the granting a Civ.R. 12(B)(6) motion, an appellate court must independently review the complaint to determine de novo whether dismissal was appropriate. Hunt v.Marksman Prod., Div. of S/R Industries, Inc. (1995),101 Ohio App. 3d 760, 762, 656 N.E.2d 726. Decisions on Civ.R. 12(B)(6) motions are not findings of fact, but are rather conclusions of law. State ex. rel. Drake v. Athens Cty. Bd. of Elections
(1988), 39 Ohio St.3d 40, 528 N.E.2d 1253. An appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. Id.
 {¶ 43} In order to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recover. Greeley v.Miami Valley Maintenance Contrs. Inc. (1990), 49 Ohio St.3d 228,551 N.E.2d 981. A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials. Id. Moreover, a court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party. Mitchell v. LawsonMilk Co. (1988), 40 Ohio St.3d 190, 532 N.E.2d 753.
1. Castle Hill VII's Claim that the Non-Midland DefendantsTortiously Interfered with the Restaurant Leases
(First Claim for Relief)
2. Castle Hill VIII's Claim that the Non-Midland DefendantsTortiously Interfered with the Restaurant Leases
(Third Claim for Relief)
3. Castle Hill V, VI, and VIII's Claim that the Non-MidlandDefendants Tortiously Interfered with the Resolution of DefaultAgreements
(Seventh Claim for Relief)
 {¶ 44} In the first claim for relief, Castle Hill VII alleged that Al Hut, Inc., Shepards, Great Lakes II and III, Clearwater, Flocken and Hudson (collectively referred to as the "non-Midland defendants") were liable for tortious interference with the Restaurant Leases. In the third claim for relief, Castle Hill VIII alleged that the non-Midland defendants were liable for tortious interference with the Restaurant Leases. In the seventh claim, Castle Hill V-VII alleged that the non-Midland defendants were liable for tortious interference with the Resolution Agreement.
 {¶ 45} Defendants argued that Castle Hill VII and Castle Hill VIII failed to set forth claims for tortious interference because the complaint alleges that the non-Midland defendants are managers, members, officers, or employees of Midland II and Midland III. As such, they are not "third parties" to the contracts and cannot be found liable for tortious interference as a matter of law.
 {¶ 46} The elements of tortious interference with a business relationship are: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. Brookside Ambulance, Inc. v. Walker AmbulanceService (1996), 112 Ohio App.3d 150, 155-156, 678 N.E.2d 248;UZ Engineered Prods. Co. v. Midwest Motor Supply Co. (2001),147 Ohio App.3d 382, 2001-Ohio-8779, 770 N.E.2d 1068; Spaffordv. Cuyahoga Cmty. College, Cuyahoga App. No. 84786,2005-Ohio-1672.
 {¶ 47} Tortious interference with business occurs when a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another. Juhasz v. QuikShops, Inc. (1977), 55 Ohio App.2d 51, 379 N.E.2d 235, paragraph two of the syllabus; Miller v. Wikel Mfg. Co., Inc. (1989),46 Ohio St.3d 76, 79, 545 N.E.2d 76; A B-Abell Elevator Co. v.Columbus/Cent. Ohio Bldg. Constr. Trade Council,73 Ohio St.3d 1, 1995-Ohio-66, 651 N.E.2d 1283, 1294. It is axiomatic that the wrongdoer must be a non-party to the contract. See, e.g., Kentyv. Transamerica Premium Ins. (1995), 72 Ohio St.3d 415, 418,650 N.E.2d 863, 866,; A B-Abell Elevator Co. v. Columbus/CentralOhio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14,651 N.E.2d 1283, 1294. Thus, it is generally established that corporate officers are not capable of interfering with contracts to which their principal is party. See Erebia v. ChryslerPlastic Products Corp. (C.A.6 1989), 891 F.2d 1212, 1215-1216. The alleged wrongdoer is considered a third party, however, where he or she has acted not in the capacity as a corporate officer but has acted solely in his or her personal capacity. Miller v.Wikel Mfg. Co., Inc.; Emergency Preemption, Inc. v. EmergencyPreemption Systems, Inc. (Aug. 14, 1997), Cuyahoga App. No. 71350.
 {¶ 48} With regard to the element of lack of privilege, we note that a person is privileged to interfere in a contract if he or she is legitimately asserting a legally protected interest that the person believes will be impaired by the performance of the contract. See Juhasz v. Quik Shops, Inc., supra. Officers, directors, and creditors of a corporation have a privilege to interfere with contracts in furtherance of their legitimate business interests. Canderm Pharmacal, Ltd. v. ElderPharmaceuticals, Inc. (C.A. 6 1988), 862 F.2d 597, 601; Bell v.Le-Ge, Inc. (1985), 20 Ohio App.3d 127, 485 N.E.2d 282; Pearsev. McDonald's (1975), 47 Ohio App.2d 20, 351 N.E.2d 788. However, such corporate officers may be liable for interfering with a corporation's contract if he or she was acting solely in his or her personal capacity or contrary to the corporation. SeePurisch v. Tenn. Tech. Univ. (C.A.6 1996), 76 F.3d 1414, 1420.
 {¶ 49} The requirements of pleading tortious interference with business in relation to corporate officials were discussed in In Re/Max Int'l, Inc. v. Smythe, Cramer Co. (N.D.Ohio 2003),265 F.Supp.2d 882. The court stated:
 {¶ 50} "Here, the tort of interference with existing contractual relations requires: 1) the existence of the prospect of a business relationship; 2) the defendant's knowledge of the plaintiff's prospective relationship; 3) the defendant's intentional and material interference with the plaintiff's prospective relationship; 4) the lack of justification; 5) a showing that but for the alleged interference, the plaintiff would have consummated the prospective relationship; and 6) resulting damages. See, e.g., Chrvala [v. Borden, Inc., (S.D. Ohio 1998)] 14 F.Supp.2d [1013,] 1023, 14 F.Supp.2d at 1023;Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415,1995-Ohio-61, 650 N.E.2d 863 (1995).
 {¶ 51} "In its complaint, RE/MAX has sufficiently alleged these elements, including the lack of justification. Specifically, RE/MAX avers that Smythe, Cramer's conduct `is not privileged because of [Smythe, Cramer's] use of wrongful means in its interference and also because its action creates and/or constitutes an unlawful restraint of trade.' Therefore, a 12(b)(6) dismissal of the tortious interference claim is inappropriate."
 {¶ 52} Similarly, in Clauder v. Holbrook (Jan. 28, 2000), Hamilton App. No. C-990145, the court considered the pleading requirements yet again and stated:
 {¶ 53} "DateOne is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction.
 {¶ 54} "In this case, the record supports the conclusion that, even if Holbrook had interfered in the contract between Clauder and Capital Development, he had a privilege to do so by lawfully seeking resolution of his dispute with Clauder in the court of common pleas.
 {¶ 55} "Therefore, we hold that the trial court did not err in dismissing Clauder's complaint for failure to state a claim on which relief could be granted. [Footnotes omitted.]"
 {¶ 56} The Lorain County Court of Appeals considered the pleading requirements in Gall v. Dye (Sept. 8, 1999), Lorain App. No. 98CA007183, and determined that because plaintiff pled that defendant acted "with malice" he adequately pled lack of privilege. The court stated:
 {¶ 57} "Appellees contend that the appellants' allegations of tortious interference do not state a cause of action for three reasons: (1) appellants have not shown with specificity what contracts have been breached; (2) a [*11] qualified privilege exists; and (3) there is no showing of damages. Appellees' arguments are not well taken.
 {¶ 58} "The issue of a qualified privilege was resolved above in the discussion of appellants' libel claim — there is a sufficient allegation of actual malice, the good faith requirement of the qualified privilege is not found on the face of the complaint."
 {¶ 59} Applying all of the foregoing to this matter, we note that the complaint alleges in relevant part as follows:
 {¶ 60} "6. * * * Al Hut, is and at all times was, the majority member of Midland III.
 {¶ 61} "* * *
 {¶ 62} "9. * * * At all material times, Shepards has provided and continues to provide, management consulting services to Midland II and Midland III pursuant to a Management Agreement.
 {¶ 63} "* * *
 {¶ 64} "12. Great Lakes II and Great Lakes III own and/or operate Checkers and/or Rally's franchise restaurants in Michigan, Missouri and Pennsylvania.
 {¶ 65} "13. Clearwater is a corporation organized and existing * * * to act as a venture capital/financial investment vehicle for the benefit of Albert J. DiMarco.
 {¶ 66} "14. DiMarco, who is now deceased, was the managing member and an officer and employee of Midland II, Midland III, Shepards, Great Lakes II and Great Lakes III.
 {¶ 67} "15. DiMarco neither practices, respected nor adhered to applicable corporate and other legal formalities in operating Al Hut, Midland II, Midland III, Shepards, Great Lakes II, Great Lakes II and/or Clearwater. Furthermore Al Hut, Midland II, Midland III, Shepards, Great Lakes II, Great Lakes II and/or Clearwater were operated merely as alter egos of DiMarco * * *.
 {¶ 68} "16. Flocken * * * is a minority shareholder of Al Hut, and a member, manager, officer and employee of Midland II, Midland III, Sherpards, Great Lakes II and Great Lakes III.
 {¶ 69} "17. Hudson * * * is a minority shareholder of Al Hut, and a member, manager, officer and employee of Midland II, Midland III, Sherpards, Great Lakes II and Great Lakes III.
[Claim One]
 {¶ 70} "66. Midland II and Midland III have materially breached the provisions of their respective Restaurant Leases * * *
 {¶ 71} "67. The actions of the non-Midland Defendants, Al Hut, Shepards, Great Lakes II, Great Lakes III, Clearwater, Flocken and Hudson, tortiously interfered with Castle Hill VII's interests in the Restaurant Leases by causing Midland II and Midland III to breach their obligations under the respective Restaurant Leases.
 {¶ 72} "68. The non-Midland Defendants' wrongful and tortious interference with Castle Hill VII's contractual relationship with CNL has injured and will continue to injure Castle Hill VII. * * *"
[Claim Three]
 {¶ 73} "78. Midland III has materially breached the provisions of the Castle Hill VIII Restaurant Lease * * *
 {¶ 74} "79. The actions of the non-Midland Defendants, Al Hut, Shepards, Great Lakes II, Great Lakes III, Clearwater, Flocken and Hudson, tortiously interfered with Castle Hill VIII's interests in the Restaurant Leases by causing Midland III to breach its obligations under such Lease.
 {¶ 75} "80. The non-Midland Defendants' wrongful and tortious interference with Castle Hill VIII's contractual relationship with CNL has injured and will continue to injure Castle Hill VIII. * * *"
[Claim Seven]
 {¶ 76} "107. The Midland Companies have materially breached the provisions of the Resolution [of Default] Agreement by filing the Delaware Action in or about November 1998, notwithstanding the mutual and reciprocal releases set forth in the Resolution [of Default] Agreement.[1]
 {¶ 77} "108. The actions of the non-Midland Defendants, Al Hut, Shepards, Great Lakes II, Great Lakes III, Clearwater, Flocken and Hudson, tortiously interfered with the legitimate rights and interests of Castle Hill V, Castle Hill VI, and Castle Hill VII in the Resolution [of Default] Agreement by causing the Midland companies to breach their obligations under such Agreement.
 {¶ 78} "109. The non-Midland Defendants' wrongful and tortious interference with the contractual relationship between the Castle Hill Companies and the Midland Companies as set forth in the Resolution [of Default] Agreement has injured and will continue to injure Castle Hill V, Castle Hill VI, and Castle Hill VII * * *."
 {¶ 79} We conclude that the allegations fail to state a claim against Al Hut, Inc. and Shepards. Plaintiffs allege that Al Hut, Inc. is the majority shareholder of Midland III. As such he is a party to the contracts, and not a third party who may tortiously interfere with Midland's business dealings. Moreover, plaintiffs did not allege that he has acted in his personal capacity or contrary to the corporation. Similarly, the complaint fails to state a claim for tortious interference with business against Flocken and Hudson as the complaint does not establish that they are third parties to the agreements. Rather, plaintiffs alleged that these defendants are members, managers, officers and employees of Midland II, Midland III and the complaint does not allege that they acted in their personal capacities or contrary to the Midland companies. Finally, plaintiffs have failed to state a claim against Shepards, Great Lakes II, Great Lakes II and/or Clearwater as the complaint alleges that these entities were operated merely as alter egos of DiMarco, and that DiMarco was "managing member and an officer and employee of Midland II, Midland III[.]" Thus, the complaint does not state a claim against these defendants as third parties to the dealings of Midland II and Midland III.
 {¶ 80} Moreover, neither claim one, claim three nor claim seven allege that these entities acted without privilege, the fourth requisite element of this claim for relief.
 {¶ 81} From the foregoing, the trial court correctly determined that claims one, three and seven fail to state a claim for relief for tortious interference with business.
 {¶ 82} "4. Castle Hill VII's claim for Tortious Interferencewith Prospective Business Opportunities
(Fifth Claim for Relief)
 {¶ 83} In the fifth claim for relief, Castle Hill VII alleged that all of the defendants were liable for tortious interference with its prospective business opportunities as the breach of the Restaurant Leases (subleases) caused Castle Hill to default on its obligations to CNL and to lose all interest in the parcels.
 {¶ 84} Defendants argued that Castle Hill VII failed to state a claim for relief because tortious interference with prospective business opportunities must be asserted as an intentional tort and Castle Hill has merely alleged breach of contract in support of this claim.
 {¶ 85} As an initial matter, we note that the breach of a contract is not a tort. Brads v. First Baptist Church (1993),89 Ohio App.3d 328, 624 N.E.2d 737; Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 482 N.E.2d 955. A breach of contract alone will not give rise to an action in tort, regardless of the tortfeasor's motive. Ameritrust Co. Nat'lAss'n v. West Am. Ins. Co. (1987), 37 Ohio App.3d 182, 186,525 N.E.2d 491, citing Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272, 452 N.E.2d 1315. Moreover, the Ohio Supreme Court has held that the addition of the adverbs "intentionally" and "willfully" do not change the nature of the cause of action.Ketcham v. Miller (1922), 104 Ohio St. 372, 377, 136 N.E. 145,146. See, also, Tibbs v. Natl. Homes Constr. Corp. (1977),52 Ohio App.2d 281, 290, 369 N.E.2d 1218, 1224-1225.
 {¶ 86} In Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals,Inc. (C.A.6 1987), 862 F.2d 597, the court distinguished breach of contract from tortious interference and stated:
 {¶ 87} "Although there is a cause of action for tortious interference in Ohio, * * * when only a breach of contract is alleged, as here, `the action sounds in contract, not tort in Ohio.' Battista v. Lebanon Trotting Ass'n, 538 F.2d 111, 117 (6th Cir. 1976) (citing Ketcham v. Miller, 104 Ohio St. 372,136 N.E. 145 (1922)). According to Ketcham the addition of an averment of malice does not change a contractual action into one in tort. Ibid. In its attempt to state a cause of action for some harm other than breach of contract, Canderm only alleges that Elder was `motivated by [SPI's] willful, wanton and malicious attitude toward [Canderm].' (App. 17). Canderm avers that `such motivation and conduct by [SPI] constitutes a basis for an action in tort, which [Canderm] hereby specifically pleads.'
 {¶ 88} "The Ohio courts repeatedly have stated that `it is no tort to breach a contract, regardless of motive.' Ibid.; Hoskinsv. Aetna Life Insurance Co., 6 Ohio St.3d 272, 452 N.E.2d 1315,1320 (1983); Olbrich v. Shelby Mutual Insurance Co.,13 Ohio App.3d 423, 469 N.E.2d 892 (1983). Canderm's attempt to transform a breach of contract into tortious interference with contract must fail. `The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by law because of the relations of the parties, rather than from a mere omission to perform a contract obligation. Battista,538 F.2d at 117. Here, such a duty has not been alleged or proved. Thus, Canderm has not stated a claim for tortious interference with contract * * *."
 {¶ 89} The court also noted that Ohio courts have approved "the well-recognized privilege of officers, directors, officers, and creditors to interfere with contracts in the furtherance of their legitimate business interests" and stated:
 {¶ 90} "Thus, in Ohio, `one is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract.' Pearse v. McDonald's Systems ofOhio, Inc., 47 Ohio App.2d 20, 351 N.E.2d 788 (1975). It would appear, then, that the trial court was correct in its conclusion that SPI, the parent company of Elder, was, in effect, the same entity as Elder, and, so, was privileged to become involved in the relations between Canderm and Elder."
 {¶ 91} Accord Klusty v. Taco Bell (S.D. Ohio 1995),909 F.Supp. 516, 521 ("All that Plaintiffs have alleged in this action by way of tortious interference is that Taco Bell has disrupted Plaintiffs' business relationships by not paying what was owed on the construction contracts. Plaintiffs have not alleged any independent inducement from Taco Bell to third parties having business relationships with Plaintiffs to cease those business relationships").
 {¶ 92} In this matter, plaintiffs alleged as follows:
 {¶ 93} "86. Midland II and Midland III, with the knowledge, assistance and active participation of the other Defendants, unjustifiably breached the Restaurant Leases by, inter alia, refusing to pay the entire amounts of rents due thereunder.
 {¶ 94} "87. Al Hut, Shepards, Great Lakes II, Great Lakes III, Clearwater, Flocken and Hudson caused, and actively participated in Midland II and Midland III's unjustifiable breaches of the Restaurant Leases.
 {¶ 95} "88. Defendants, each of them, knew or reasonably should have known that, by breaching the Restaurant Leases, they would wrongfully and improperly interfere with Castle Hill VII's prospective business opportunities."
 {¶ 96} We conclude that the foregoing alleges breach of contract, and do not state a claim for tortious interference with business, as the conduct alleged is simply that the rents were not fully paid as per the parties' agreement. The addition of the word unjustifiably does not elevate the claim to the tort action. The trial court correctly granted defendants' motion to dismiss this claim under Civ.R. 12(B)(6). Moreover, as we have noted previously, all of the so-called "non-Midland defendants" actually are alleged to have affiliations with this company and are not alleged to have acted in their sole capacity or without privilege.
 {¶ 97} "5. Castle Hill's Claims against Al Hut, Inc. and theMidland Defendants for Breach of the Resolution of DefaultAgreement
(Sixth and Eighth Claims for Relief)
 {¶ 98} In the sixth claim for relief, Castle Hill V and Castle Hill VI alleged that defendant Al Hut, Inc. breached its obligations under the Resolution Agreement. In the eighth claim for relief, Castle Hill V-VII alleged that the Midland defendants breached the Resolution Agreement.
 {¶ 99} Defendants argued that Castle Hill V, VI and VII failed to state claims for relief for breach of the Resolution of Default Agreement because this document, attached to its complaint, makes no mention of Castle Hill V, VI, or VII. Thus, according to defendants, these entities cannot claim breach of the contract as a matter of law.
 {¶ 100} Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio. Thornton v. Windsor House, Inc. (1991),57 Ohio St.3d 158, 161, 566 N.E.2d 1220, 1223; Sony Elecs. v. Grass ValleyGroup, Hamilton App. No. C-010133, 2002-Ohio-1614; GrantThornton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158, 161,566 N.E.2d 1220.
 {¶ 101} As to procedure we note that written instruments attached to the complaint and incorporated therein pursuant to Civ.R. 10(D) are part of the pleading for all purposes. Civ.R. 10(C); Denlinger v. Columbus (Dec. 7, 2000), Franklin App. No. 00 AP-315.
 {¶ 102} In this matter, defendants insist that Castle Hill V and Castle Hill VI have no connection to the Resolution of Default Agreement because they are not listed in the Reciprocal Releases provision of this agreement. We note, however, that Ronald Saverin is listed as one of the parties in this section, and he signed the agreement for himself and "for and on behalf of Castle Hill V and Castle Hill VI." Further, within the complaint, plaintiffs alleged that the Castle Hill companies would provide Midland's creditors with access to their books and records and would consent to certain assignments of their leases. Further, Castle Hill V and Castle Hill VI are specifically mentioned in Section P of the Resolution of Default Agreement as follows:
 {¶ 103} "Castle Hill V and Castle Hill VI. Ronald Saverin agrees to cause Castle Hill V and Castle Hill VI [sic] and Castle Hill V and Castle Hill VI shall reasonably cooperate with Midland and its assignees in respect of any leases with Castle Hill V and Castle Hill VI, including, without limitation, providing estoppels and consents to assignments of the respective leases."
 {¶ 104} Defendants also insist that plaintiffs have not alleged that defendants actually breached the Resolution of Default Agreement, as plaintiffs alleged merely that Saverin filed suit in Delaware. We do not accept this characterization of the complaint as plaintiffs alleged various "breaches, * * * including without limitation by the commencement of the Delaware action."
 {¶ 105} In accordance with the foregoing, we cannot say that it appears beyond doubt from the complaint that the plaintiffs can prove no set of facts entitling them to recover on this claim for relief. Accordingly, we conclude that the trial court erred in dismissing this claim for relief.
 {¶ 106} In accordance with the foregoing, the judgment of the trial court is affirmed as to the dismissal of the first, third, fifth and seventh claims for relief and is reversed and remanded as to the fourth, sixth and eighth claims for relief.
It is ordered that appellees and appellants split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., concurs.
 Calabrese, Jr., J., Concurs in part and Dissents in part (seeattached concurring and dissenting opinion)
[1] Plaintiffs also alleged, with regard to this litigation as follows:
"101. [Within the Delaware Action plaintiffs] specifically requested that the Court invalidate the clear and unambiguous terms of the Restaurant Leases."
 CONCURRING AND DISSENTING OPINION