PEARSE, APPELLEE, *v.* McDONALD'S SYSTEMS OF OHIO, INC., APPELLANT; FELLERS, INC., ET AL., APPELLEES.

[Cite as Pearse v. McDonald's (1975), 47 Ohio App. 2d 20.]

(No. 75AP-212—Decided December 2, 1975.)

*Messrs. Tyack, Scott & Colley, Mr. Thomas M. Tyack* and *Mr. Gary Tyack,* for appellee.

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey,* for appellant and appellee Frank Phalin.

*Messrs. George, Greek, King, McMahon & McConnaughey* and *Mr. Stephen J. Vergamini,* for appellees Fellers, Inc., McHigh, Inc., and Robert E. Fellers.

HOLMES, J. This matter involves the appeal of a judgment of the Court of Common Pleas of Franklin County on behalf of the plaintiff against defendant McDonald's Systems of Ohio, Inc. The matter was tried to the trial court basically upon the stipulation of facts, the pertinent portions of which are as follows.

McDonald's Systems and its predecessor are engaged in the fast food business, both directly and through a franchise licensing system. Defendants McHigh, Inc., and Fellers, Inc., are Ohio corporations, owned and controlled by defendant Robert E. Fellers, and held and operated as Mc-

Donald's stores under franchise licenses with McDonald's Systems of Ohio, Inc.

The facts further show that on and before March 1, 1972, the plaintiff Pearse had been employed by McHigh, Inc., and Fellers, Inc., as the manager of the McDonald's franchise retail food store on South High Street in Columbus, Ohio, and had continued in that employment until his resignation became effective March 31, 1972. The facts show that sometime prior to March 10, 1972, plaintiff Pearse had contacted Mr. Guy Cicchini, another licensee of McDonald's, who had built a new McDonald's store on North High Street, in Columbus. This contact by plaintiff was for the purpose of obtaining employment with Cicchini as store manager at such store. It appears from the record that it was more desirable for the plaintiff to work at this new store as it was closer to his home. After a discussion, Mr. Cicchini offered plaintiff employment as manager in the new McDonald's franchise store.

In accordance with the aforementioned conversation and offer of employment, plaintiff, on or about March 21, 1972, accepted the position of store manager for Mr. Cicchini, and agreed to commence working as such. Subsequently, on March 22, 1972, plaintiff resigned his position with McHigh, Inc., in writing, effective March 31, 1972, and informed Mr. Fellers that he was accepting employment with Guy Cicchini as a store manager of Cicchini's McDonald's franchise store.

The defendant McHigh, Inc., and its owner, Mr. Fellers, informed McDonald's Systems of Ohio, Inc., of the employment of the plaintiff by Cicchini's McDonald's franchise store, and demanded that McDonald's enforce against Mr. Cicchini a certain provision of the McDonald's franchise license agreement, which prohibits the employment by one franchisee of another franchisee's manager.

The facts further show that on or about April 3, 1972, Mr. Frank Phalin, the regional manager of McDonald's, who had authority to review and determine franchise compliance under franchise license agreements, determined the facts were as complained of by Mr. Fellers, and proceeded

to request a meeting with the plaintiff Pearse, Mr. Cicchini, and Mr. Fellers. At such meeting, Mr. Phalin reviewed the franchise license agreement with Mr. Cicchini, and informed him that McDonald's would enforce the provisions of such agreement; thereupon, Mr. Cicchini discharged the plaintiff Pearse from his employment at Cicchini's McDonald's franchise store.

Thereafter, the plaintiff Pearse brought this action alleging that defendant McDonald's Systems of Ohio, Inc., did, "maliciously, wrongfully, intentionally, and without justification, interfere with the contract between plaintiff and Guy Cicchini, and the said defendants did intentionally procure the breach of the aforesaid contract, all to plaintiff's damage."

Upon the trial hereof, the trial court made certain findings of fact, which were as follows:

"(1) Guy Cicchini violated the terms of his contract with Defendant, McDonald's, in hiring Plaintiff.

"(2) Defendant, McDonald's had knowledge of the hiring of Plaintiff by Guy Cicchini.

"(3) Defendant, McDonald's, induced Guy Cicchini to discharge Plaintiff.

"(4) Defendant, McDonald's, had no legitimate business interest in inducing Guy Cicchini to discharge Plaintiff.

"(5) Plaintiff was damaged in the amount of $1,684.90, based upon $700.00 per month, there being insufficient proof of the added percentages.

"(6) No actual malice on the part of Defendant, McDonald's was shown."

The trial court also entered certain conclusions of law which, in essence, referred to certain sections of IV Restatement of Torts, upon which McDonald's had relied as their major defense, as follows:

"Section 766. General Principle.

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) Perform a contract with another, or

(b) Enter into or continue a business relation with another is liable to the other for the harm caused thereby.''

"Section 773. Privilege to assert Bona Fide Claim. One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction.''

The trial court then stated that it was in agreement with the law set forth in section 766, but, as related to section 773, the trial court stated: ''* * * if it be good law, there would need to be a factual showing of good faith on the one asserting the privilege and that he has a legally protected interest. The evidence in this case shows a complete lack of a legally protected interest on the part of Defendant, McDonald's.'' Then the court went on to explain the basis of its determination that McDonald's had not shown a legally protected interest, by stating that: ''By Defendant's own evidence and argument of counsel, Plaintiff could have resigned March 31, 1972; worked for Burger King April 1, 1972, and resigned at the close of work on April 1, 1972; then taken a job with Mr. Cicchini on April 2, 1972, and thus would have 'sufficiently insulated himself.' ''

The court then concluded that: ''If such minimal insulation is sufficient McDonald's interest it was seeking to protect was equally minimal and impairment or destruction of such a minimal interest was not sufficient to grant it such a privilege as contemplated in Sec. 773.'' The court then found that there being no actual malice shown, plaintiff was not entitled to punitive damages, and then awarded plaintiff the amount of $1,864.90 as compensatory damages.

The appellant sets forth the following assignments of error:

''1. The Court erred as a matter of law in the [sic] holding appellant McDonald's liable for injuries suffered by plaintiff as a result of his discharge from employment by Cicchini.

''2. The Court erred in finding as a matter of fact, and

also as a matter of law, that appellant had no legally protected interest in enforcing its franchise contract with Cicchini.

"3. The Court erred as a matter of law in holding that appellant had the burden of proving the existence of a legally protected interest, and erred in determining that appellant had failed to establish the existence of a legally protected interest.

"4. The Court erred in failing to grant judgment in favor of appellant McDonald's.

"5. The judgment is against the manifest weight of the evidence."

We find that all of these assignments of error are well taken. At the outset, we shall dispose of the theoretical case as discussed by the court which presented the court with its basis for finding the defendant's interest in such a contractual arrangement to be "minimal." The trial court stated that the plaintiff could have "insulated himself" by resigning from McHigh, Inc., working one day for somebody else, and then entering the employment of Mr. Cicchini. Even though it is true that counsel for the defendant had in the lower court conceded that such a factual situation would insulate the plaintiff from the operative provision of the franchise agreement, it is our position that it would be a factual determination by the trial court as to whether such a set of circumstances would constitute a subterfuge to evade the subject provision of the franchise agreement or not. If it were determined that such a set of circumstances would in fact constitute a subterfuge, then the operative provision of the agreement would still be effective, since it explicitly states that another franchisee shall not "directly or indirectly" induce an employee to leave his or her employment with another franchisee.

The specific language of the franchise agreement reads as follows:

"Interference with Employment Relations of Others.

"During the effective term of this franchise and license, licensee shall not employ or seek to employ any person who is at the time employed by McDonald's Corporation, its sub-

sidiaries, the Licensor, or by any person who is at the time operating a similar establishment under license from Licensor, or otherwise directly or indirectly induce such person to leave his or her employment as aforesaid.''

In any event, such set of circumstances does not exist in the instant case. Thus, the trial court erred in using such a set of circumstances to come to its conclusion; hence, the question is whether, under the facts as before the trial court, the defendant had shown that it had a legally protected interest which had been impaired by the employment of the plaintiff by Mr. Cicchini.

Pursuant to the provisions of Section 773, IV Restatement of Torts, which was referred to by the trial court and which we apply to the determination of this instant matter, one is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract. The application of the law, as found in such section, 45 American Jurisprudence 2d 280, Interference, Section 1, tells us that where interference has been charged for an act lawful in itself, whether or not there is a right of recovery is determined by balancing the interests of the defendant in doing his otherwise lawful act and of the plaintiff in being free from interference. It would then seem to be necessary to balance all of the interests, social, economic and private, of the objectives as advanced in defense of the interference as against the importance of the interest interfered with, considering all of the facts and circumstances of the matter, including the method and means used and the relationship of the parties.

Here the record will show that McDonald's had offered proof that its business success was directly related to a business method which, in essence, stressed the uniformity of the identification and the quality of the product of the franchisor to the public. Further, the evidence shows that for the above purpose the franchisor had established a very sophisticated and integrated control system to insure such factors as quality, cleanliness, service, managerial experi-

ence, and cost controls. The evidence further shows that McDonald's earnings in the franchise portion of its business are derived from franchise royalty fees and from rentals of its properties, both being related to and based upon the sales volume of the retail stores.

The evidence as adduced further tends to show that the key person in maintaining the standards and efficiency of the McDonald's business system, and therefore its profitability based upon such volume, is the retail store manager. The evidence further shows that McDonald's was operating a very intricate staff training program for its managers, and that such direct training program entailed a sizable capital investment for facilities as well as a large annual operating budget for such training programs.

The testimony adduced at trial showed that the minimum necessary training period for a store manager was one year, and may require up to three years. The testimony further showed that in the event of the loss of a manager, the cost to the franchise operator of training replacement is between $12,000 and $15,000, and that there was a high probability of a loss of sales volume and profits because of the loss of such a manager, and the period of retraining. There was further testimony that the cross-hiring of managers within the total franchise business system would tend to break the efficiency and integrity of the system, would increase the costs of doing business within the total system, and would result in a loss of sales volume and, therefore, a loss of profits to McDonald's, Inc.

We hold that the evidence as adduced on behalf of this appellant would convincingly show that there was a valid relationship between McDonald's desire to avoid the enticement and hiring of its franchisees' managers within the system, and the profit factors as experienced by the franchisor McDonald's in the overall unified operation of its system. It is our finding and we so hold that the contract of employment as entered into by and between the plaintiff Mr. Pearse and Mr. Cicchini, while the plaintiff was still in the employ of defendant McHigh, Inc., and Mr. Robert Fellers, in fact presented a very real impairment to its operating agreements with its franchisees.

Further, we hold that such act, then, is lawful by way of qualifying as a privileged assertion in protection of a legally protected interest. Further, in weighing the interests of McDonald's against the plaintiff in being free from the interference of job changing between franchisees, we hold that the balance must favor the legitimate business objectives advanced by McDonald's.

Although there is to be found little or no authority within Ohio upon which to rely in deciding this matter, we do note that there has been a similar case presented and decided in another jurisdiction, *Kelly* v. *International Harvester Company* (1971), 278 N. C. 153, 179 S. E. 396, wherein the court, considering a similar fact pattern, cited IV Restatement of Torts, Section 773, and upheld International Harvester's privilege on the basis of their common law and contractual rights to protect their economic interest in the franchise system. We believe this to be a sound position of law, and adopt it here.

Based upon all of the foregoing, we hold that the trial court erred in holding the appellant liable for injuries suffered by plaintiff as a result of his discharge from employment by Cicchini, and that the trial court erred in finding as a matter of fact and also as a matter of law that appellant had no legally protected interest in enforcing its franchise contract with Cicchini. Further, we hold that the trial court erred as a matter of law in holding that appellant had failed to establish the existence of a legally protected interest, and that the trial court erred in failing to grant a judgment in favor of the appellant. Finally, we hold that the judgment is against the manifest weight of the evidence.

Therefore, the judgment of the Court of Common Pleas of Franklin County is hereby reversed, and final judgment is entered for McDonald's Systems of Ohio, Inc.

*Judgment reversed.*

STRAUSBAUGH, P. J., and McCORMAC, J., concur.