Patricia L. SALATIN, Trustee of the David C. Salatin Charitable Remainder Unitrust, Plaintiff,

v.

TRANS HEALTHCARE OF OHIO, INC., et al., Defendants.

No. 3:01–07270.

United States District Court, N.D. Ohio, Western Division.

Sept. 24, 2001.

Andrew W. Owen, Buckingham, Doolittle & Burroughs, Akron, OH, John H. Hanna, Hanna & Fisher, Napoleon, OH, Richard S. Walinski, Cooper & Walinski, Toledo, OH, Thomas W. Hess, Buckingham, Doolittle & Burroughs, Columbus, OH, for Plaintiff.

Charles M. Tea, III, Kirkpatrick & Lockart, Pittsburgh, PA, Richard M. Kerger,

Valerie D. Moffitt, Kerger & Kerger, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

Plaintiff Patricia L. Salatin, Trustee of the David C. Salatin Charitable Remainder Unitrust, brings this declaratory action against Defendants Trans Healthcare of Ohio, Inc. ("THIO") and Trans Healthcare, Inc. ("THI") asking this Court to determine the ownership of "operating rights" to beds at a nursing home facility.[1] Plaintiff also seeks temporary, preliminary, and permanent injunctive relief. Finally, plaintiff asserts promissory estoppel, tortious interference with business relations, and breach of contract claims against defendants. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). Pending is defendants' motion to dismiss plaintiff's complaint and defendant THI pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, defendants' motion shall be granted in part and denied in part.

## BACKGROUND

On March 12, 1976, David C. Salatin and Curtis H. Springer, as lessors, entered into a lease agreement ("Lease") with Northwestern Service Corporation ("Northwestern"), as lessee, to lease a nursing home facility located at 600 East Joe E. Brown Avenue, State Route 18, in Holgate, Ohio. On February 15, 1994, Springer quit claimed all of his interest in the facility to Salatin. On October 2, 1997, Salatin conveyed all of his interest in the facility to David C. Salatin, as Trustee of the Trust. On September 30, 2000, Salatin assigned all of his interest in the lease to plaintiff Patricia L. Salatin, as Trustee of the Trust.

On December 7, 1992, Northwestern merged into Providence Health Care, Inc. ("Providence"), which succeeded to all interests of Northwestern. On October 1, 2000, Providence assigned all of its interest in the Lease to THIO. The Lease was to expire on March 31, 1996, but contained an option, which THIO exercised, to extend the term for an additional five years.

By correspondence · dated January· 26, 2001, THIO notified the Trust in writing that THIO would not again extend the Lease. Later, THIO informed the Trust of THIO's interest in purchasing the operating rights associated with the nursing home beds at the facility. On February 2, 2001, the Trust gave THIO a proposed agreement for THIO's purchase of the operating rights. THIO subsequently told the Trust that THIO would not purchase the operating rights.

Thereafter, the Trust obtained a potential buyer, prepared a letter of intent, and gave it to the potential buyer. The buyer executed the letter of intent on April 12, 2001. After the Trust received the executed letter of intent, representatives of THIO told representatives of the Trust that THIO would cooperate in the transfer of the facility to the buyer. Closing of the facility's sale was scheduled for May 31, 2001.

---

1. "Operating rights" is a term of art first mentioned in 1986 in the Ohio Administrative Code provision establishing requirements for relocating nursing home beds. OHIO ADMIN. CODE § 3701–12–232(B) (A person requesting relocation must be both the licensed operator of the nursing home facility and the owner of the operating rights to the facility.). Before 1986 and at the time the parties' predecessors entered into the lease in this case, the term "operating rights" had no legal significance. *See In re Eda Rae Care Center*, No. 94APH08–1232, 1995 WL 127882, *4, 1995 Ohio App. LEXIS 1065, at *11 (March 23, 1995). The lease in this case, therefore, does not address the issue of "operating rights."

On April 23, 2001, THIO told the Trust that THIO believed THIO held the operating rights to the facility's beds. THIO also told the Trust that THIO was considering the transfer of the beds to another facility and that THIO would not consent to or cooperate in a change of operator for the nursing home beds.

## STANDARD OF REVIEW

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## DISCUSSION

### I. Counts One and Two: Operating Rights Ownership

Defendants argue the complaint should be dismissed for failure to state a claim because neither the Lease nor Ohio law provides plaintiff with ownership in the operating rights to the facility's beds. I disagree.

Two cases, *In re Braeview Manor,* 151 B.R. 448 (Bankr.N.D.Ohio 1993) and *In re Eda Rae Care Center,* No. 94APH08–1232, 1995 WL 127882, 1995 Ohio App. LEXIS 1065 (March 23, 1995), have discussed the issue of operating rights ownership. In *In re Braeview Manor,* the court stated, "It appears from the testimony that the ownership of the operating license, *although not conclusive,* is the best evidence as to the ownership of the operating rights." 151 B.R. at 452 (emphasis added). The court in *Braeview* also considered factors other than ownership of the operating license in determining ownership of operating rights, including: the difference between the purchase price and actual value of the property, the inclusion of operating rights as an asset in schedules filed in the case, the parties' past treatment of the buyer as the owner of the operating rights, and other issues that would influence the parties' decision to omit the transfer of operating rights from the agreement such as adverse tax consequences. *Id.*

In *In re Eda Rae Care Center,* the court looked to the historical context of the nursing home center and the status of the parties at the time the Certificate of Need law was enacted. 1995 WL 127882, *4, 1995 Ohio App. LEXIS 1065, at *11. The court used this inquiry because at the time the parties entered into the lease (as in this case), the term "operating rights" had no legal or practical significance. *Id.* 1995 WL 127882, *4, 1995 Ohio App. LEXIS 1065, *10. As in *Braeview,* the court in *Eda Rae* also considered several factors in its determination of operating rights ownership, including: the absence of a lease restriction on property use, the inclusion of a covenant not to compete in the lease, and a written agreement signed by both parties acknowledging the tenant as the owner/operator. *Id.* at **4–5, 1995 Ohio App. LEXIS 1065, **11–14.

Plaintiff's complaint states, "The Trust is entitled to a declaration from this Court that, under the terms of the Lease, the Trust holds the 'operating rights' to the beds at the Facility." (Compl. at ¶ 18.) The complaint further states, "Under Ohio law, the Trust is the holder of the 'operating rights' for the nursing home beds at the Facility." (Compl. at ¶ 20.) Defendants argue plaintiff has failed to state a claim because as owner of the operating license, defendant THIO owns the operating rights to the beds. Defendants contend,

[T]he courts that have addressed this issue have concluded without exception that the owner of the 'operating rights' is, like THIO, the party that is the actual owner of the state-issued operating license for the nursing home, and not the owner of the property on which the nursing home is situated.

(Doc. 13 at 7.)

■ While defendants correctly state the results of *Braeview* and *Eda Rae*, defendants fail to recognize that the courts were influenced by several fact-based considerations and ownership of an operating license was not conclusive. As such, because the complaint alleges plaintiff's claim in the operating rights to the facility's beds, the complaint sufficiently withstands a Rule 12(b)(6) motion. Defendants' motion to dismiss plaintiff's claim for ownership to the operating rights shall be, therefore, denied.

## II. Count Three: Promissory Estoppel

Defendants argue that plaintiff has failed to state a claim for promissory estoppel. I disagree.

■ In *Talley v. Teamsters Local Number 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44 (1976) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90 (1973)), the court discussed promissory estoppel, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." To demonstrate promissory estoppel, the plaintiff must show: "1) a promise, clear and unambiguous in its terms; 2) reasonable and foreseeable reliance; and 3) injury resulting from the reliance." *CSX Transp., Inc. v. Occidental Chem. Corp.*, 130 F.Supp.2d 936, 947 (S.D.Ohio 2001) (citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 16, 711 N.E.2d 726 (1998)).

Defendants contend plaintiff failed to state a claim for promissory estoppel because the complaint lacks factual allegations supporting the third element of a promissory estoppel claim. Defendants argue, "Since Plaintiff has not sold the Facility, and therefore still owns that asset worth $500,000.00, Plaintiff has not incurred any loss and therefore has not suffered any injury." (Doc. 22 at 5.)

■ The complaint states, "As a result of not being able to perform the sale of the assets of the Facility because of THIO's actions, the Trust has been harmed in an amount to be proven at trial, but in a minimum amount of $500,000.00." (Compl. at ¶ 31.) This statement directly alleges that plaintiff suffered the injury necessary for a promissory estoppel claim. I find plaintiff's promissory estoppel claim survives a motion to dismiss under Rule 12(b)(6). Defendants' motion to dismiss plaintiff's promissory estoppel claim shall be, therefore, denied.

## III. Count Four: Tortious Interference with Business Relations

Defendants argue plaintiff has failed to state a claim for tortious interference with business relations because: 1) plaintiff

failed to plead the requisite knowledge, 2) defendant THIO was privileged, and 3) plaintiff suffered no damages.

Tortious interference with business relations occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *A & B Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). "A party 'is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract.'" *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.,* 862 F.2d 597, 601 (6th Cir.1988) (quoting *Pearse v. McDonald's Sys. of Ohio, Inc.,* 47 Ohio App.2d 20, 23, 351 N.E.2d 788 (1975)); *Wright v. Metro-Health Med. Ctr.,* 58 F.3d 1130, 1139 (6th Cir.1995); *United States Med. Corp. v. M.D. Buyline, Inc.,* 753 F.Supp. 676, 681 (S.D.Ohio 1990).

■ The elements of tortious interference with business relations are: "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.,* 112 Ohio App.3d 150, 155–56, 678 N.E.2d 248 (1996) (citing *A & B-Abell,* 73 Ohio St.3d at 14, 651 N.E.2d 1283; *Kenty v. Transamerica Premium Ins.,* 72 Ohio St.3d 415, 650 N.E.2d 863 (1995)).

Defendants first argue that "the Complaint lacks any allegation of fact that THIO had any knowledge that Plaintiff had actually formed a business relationship with a prospective purchaser to sell the Facility." (Doc. 27 at 3.) Plaintiff argues the complaint adequately alleged the knowledge element of a tortious interference with business relations claim. I agree.

■ The complaint states, "THIO was fully aware of the efforts of the Trust to obtain a purchaser for the assets of the Facility after THIO had informed the Trust of its intent to relinquish completely its interests in the Facility." (Compl. at ¶ 33.) Furthermore, the complaint states, "After the Trust had received the executed letter of intent from buyer, representatives of THIO confirmed to representatives of the Trust that THIO would fully cooperate in the transfer of the Facility to the buyer." (Compl. at ¶ 12.) This statement alleges knowledge because THIO must have known of a buyer to agree to cooperate in the transfer of the facility to a buyer. By pleading the time sequence of these events combined with the assertion that THIO was aware of plaintiff's efforts, plaintiff adequately alleges the knowledge element of a tortious interference with business relations claim.

Defendants second argument is that defendants' assertion of ownership in the operating rights to the beds at the facility is *"unconditionally privileged* and is an absolute defense to a claim for tortious interference with business relations." (Doc. 22 at 6–7) (emphasis in original). Plaintiff contends, "[T]he issue of privilege is not a question that this Court can determine as a matter of law because it requires the finder of fact to determine whether Defendants have acted in good faith." (Doc. 26 at 4.)

■ Defendants' assertion of a legal right is not unconditionally privileged, and it is not an absolute defense to a claim for

tortious interference with business relations. Defendants must have acted in good faith. *Canderm,* 862 F.2d at 601; *Pearse,* 47 Ohio App.2d at 23, 351 N.E.2d 788; *United States Med. Corp.,* 753 F.Supp. at 681; *Juhasz v. Quik Shops, Inc.,* 55 Ohio App.2d 51, 57, 379 N.E.2d 235 (1977) (citing 4 RESTATEMENT OF TORTS 63 § 773 (1939)).

The complaint states, "Without a privilege to do so, THIO has interfered with the Trust's business relationship with buyer by reversing THIO's position regarding the interest THIO holds in the nursing home beds at the Facility." (Compl. at ¶ 34.) Because the complaint alleges that defendant THIO acted without a privilege and, therefore, did not act in good faith, the tortious interference with business relations claim must withstand a Rule 12(b)(6) motion.

Defendants finally argue plaintiff suffered no damages because plaintiff continues to own the facility. As discussed earlier, plaintiff's complaint sufficiently alleges damages and survives a motion to dismiss for failure to state a claim. *See supra* Part II.

Defendants' motion to dismiss plaintiff's tortious interference with business relations claim shall be, therefore, denied.

## IV. Count Five: Breach of Contract

Defendants argue that plaintiff has failed to state a claim for breach of contract because plaintiff failed to allege the way defendants breached the Lease. I disagree.

■ Under Fed.R.Civ.P. 8(a)(2), plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). The complaint must put the defendant on notice as to the plaintiff's claim and its grounds, but the complaint need not contain all of the particularities of the claim. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

Defendants argue that plaintiff failed to include essential facts in the complaint. Defendants contend, "If Plaintiff truly believes that THIO breached the Lease by failing to deliver possession of the Facility in an acceptable condition, then at a minimum it must provide THIO with notice of what Plaintiff contends was wrong with the condition of the Facility in order to enable THIO to prepare a meaningful and adequate response." (Doc. 22 at 7–8.) Plaintiff argues the complaint sufficiently pleads breach of contract because the complaint highlights portions of the Lease which create duties for defendants. Plaintiff argues that by pointing to specific lease duties, the complaint puts defendants on notice for the basis of a breach of contract claim. I agree.

■ The complaint states, "Defendants have breached their obligations and responsibilities under the Lease, including but not limited to ¶¶ 5 & 18 of the Lease." (Compl. at ¶ 38.) This statement is sufficient to put defendants on notice for the basis of plaintiff's breach of contract claim. Because paragraphs five and eighteen enumerate specific duties, the complaint puts defendants on notice that duties associated with maintenance, repair, operation, and surrender of the premises are the basis for the breach of contract claim. Defendants' motion to dismiss plaintiff's breach of contract claim and demand for attorney's fees under the Lease shall be, therefore, denied.

## V. Motion to Dismiss Defendant THI

Defendants contend that THI must be dismissed entirely because "plaintiff has failed to allege any facts against THI." (Doc. 22 at 1.) I agree.

■ In *Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos., Inc.*, the court stated,

Thus, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993). A parent corporation cannot be held liable simply because of its control over another corporation. *Id.* ("[M]ere control over a corporation is not in itself a sufficient basis for shareholder liability.").

■ Plaintiff's complaint fails to allege the necessary facts to support a claim for piercing the corporate veil. Plaintiff does not allege that control over THIO by THI was so complete that THIO had no separate mind, will, or existence of its own. Plaintiff does not allege that control over THIO by THI was exercised in such a manner as to commit fraud or an illegal act against plaintiff. Finally, plaintiff does not allege that injury nor unjust loss resulted to the plaintiff from such control and wrong. Plaintiff simply argues, "Even if THIO is the only lessee under the lease, if THIO is found to have breached the Lease, that breach, by extension, may extend to THI depending upon the relationship between THIO and THI." (Doc. 17 at 11.)

At this point in the litigation, plaintiff's allegation simply is not sufficient to withstand a motion to dismiss defendant THI under Rule 12(b)(6). If plaintiff encounters evidence during discovery supporting a claim for piercing the corporate veil, plaintiff may seek leave to amend the complaint. Defendants' motion to dismiss defendant THI as a party to this action shall be, therefore, granted without prejudice.

## CONCLUSION

Therefore, it is hereby

**Ordered that**

1. Defendants' motion to dismiss all counts of plaintiff's complaint be, and hereby is, denied.

2. Defendant THI be, and hereby is, dismissed from this action without prejudice.

**So Ordered.**