[Cite as *Benkovits v. Bandi*, 2021-Ohio-1877.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STEVE BENKOVITS,                              :

     Plaintiff-Appellant/
     Cross-Appellee,                       :

                                    No. 109533

v.                                           :

PETER BANDI, ET AL.,                         :

     Defendants-Appellees/
     Cross-Appellants.                      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  June 3, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-871950

---

### *Appearances:*

Jeffrey R. Froude, *for appellant/cross-appellee.*

Dinn, Hochman & Potter, L.L.C., Steven B. Potter, and Shia N. Shapiro, *for appellees/cross-appellants* Peter Bandi, Peter Bandi, Inc., d.b.a. The Ohio Connection, Bandi Investment, L.L.C., Cleveland Transportation, Inc., and Barr Auto Body Company.

SEAN C. GALLAGHER, J.:

**{¶ 1}** Plaintiff-appellant Steve Benkovits ("Benkovits") appeals the decision of the trial court that granted summary judgment on all claims raised in the complaint in favor of Peter Bandi ("Bandi"), et al. (collectively "the Bandi defendants") and Katalin Rabb ("Rabb").[1] The Bandi defendants have appealed the trial court's decision that granted summary judgment in favor of Benkovits on the counterclaims. Having thoroughly reviewed the record and fully considered the arguments presented in the briefs, we affirm the judgment of the trial court in all respects.

**Background**

**{¶ 2}** Benkovits and Rabb, formerly married, were previously parties to a divorce action in Cuyahoga County Court of Common Pleas, Division of Domestic Relations ("the domestic relations court").[2] In the 2016 agreed judgment entry of divorce,[3] it was stated that the duration of the marriage was from May 1982 until November 2008. In the agreed judgment, Rabb waived "any interest in The Ohio Connection, Peter Bandi, Inc., The Ohio Connection, Inc., and Peter Bandi, LLC"

---

[1] The Bandi defendants include Peter Bandi; Peter Bandi, Inc., d.b.a. The Ohio Connection; Bandi Investment, L.L.C.; Cleveland Transportation, Inc.; and Barr Auto Body Company. Katalin Rabb is also a defendant in this action but has not filed any briefing in this appeal.

[2] Divorce proceedings were originally initiated in 2010 in Cuyahoga C.P. No. DR-10-332476. The original action was dismissed in March 2014, and refiled in Cuyahoga C.P. No. DR-14-351403. The trial court took judicial notice of filings in these domestic relations court cases.

[3] We note that the judgment entry of divorce is dated January 19, 2016, and was filed February 18, 2016.

and her marital interest was awarded to Benkovits, "whatever interest that may be." However, there was never any determination as to what, if any, interest Rabb had in the subject business entities. As found by the trial court in this case, "the domestic relations court did not define the marital interest that Rabb owned. Nor did the domestic relations court determine the extent, nature, or scope of the marital interest that Rabb owned. Instead, the domestic relations court described the marital interest that Rabb owned as 'whatever interest that may be.'" Those issues remained to be determined at another setting. The judgment entry of divorce also stated: "It remains [Rabb's] position that The Ohio Connection, The Ohio Connection Inc., Peter Bandi Inc., Peter Bandi LLC, Peter Bandi Inc., dba The Ohio Connections are not marital properties." Further, the judgment entry ordered that "Peter Bandi is dismissed" from the action, as are "Peter Bandi, Peter Bandi, Inc., Peter Bandi, Inc., dba The Ohio Connection, The Ohio Connection, Inc., and Bandi Investments, LLC."

{¶ 3} On November 16, 2016, Benkovits, relying on the judgment entry of divorce and findings made during the divorce proceedings, filed a complaint against the Bandi defendants and Rabb in the Cuyahoga County Court of Common Pleas, General Division. Benkovits raised claims for a determination of business interest, financial misconduct with marital assets, interference with marital contract, conversion, embezzlement, theft, pattern of corrupt activity, civil conspiracy, and frivolous conduct. He demanded that "his portion of ownership of the companies in question be determined" and sought compensatory and punitive damages along

with attorney fees. The defendants filed an answer and counterclaims. Among other affirmative defenses raised was that the complaint is barred by the applicable statutes of limitations. The counterclaims alleged tortious interference and frivolous conduct.

{¶ 4} On October 11, 2017, the trial court issued an order in which it recognized the marital interest at issue originated with shares Rabb purchased in L and F Connection, Inc. ("L & F"), a transportation company, during her marriage to Benkovits.[4] The trial court adopted a finding of the domestic relations court "that Rabb purchased what turned out to be a 50% interest in L & F during her marriage to Benkovits, now divorced, that L & F continued to operate throughout the marriage, and that Rabb's interest in L & F is marital property of Rabb & Benkovits." Because the parties in the current action disputed whether Rabb had an interest in the business entities involved, the trial court ordered the parties to brief "the status of the ownership and assets of L & F at the time it became marital property" and to document each transfer of ownership and transfer of assets in order for the court to determine if any interest exists in the various business entities. The trial court declined to adopt any other findings or rulings by the domestic relations court.

{¶ 5} On August 7, 2018, following briefing from the parties, the trial court issued a judgment entry addressing Benkovits's claim to an ownership interest in the various corporate entities controlled by Bandi. The trial court recognized that

---

[4] At the time Rabb purchased her interest, L & F's assets were valued at $7,000.

the parties "agree that [Benkovits] possesses whatever interest Ms. Rabb had in L & F Connection, Inc. and The Ohio Connection, Inc., although Bandi argues that this interest was transferred to him by the 2009 oral agreement with Ms. Rabb[.]" The trial court found that Rabb purchased a 45 percent ownership interest in L & F in September 2005, that Rabb and Bandi each eventually owned 50 percent of L & F, that they formed a new corporation named The Ohio Connection, Inc. in December 2005 to continue the transportation business, that they each owned 50 percent of the outstanding shares, and that they moved the assets of L & F into The Ohio Connection, Inc. The trial court also found that in 2009, Rabb and Bandi purportedly entered an oral contract where Rabb sold her interest in The Ohio Connection, Inc. to Bandi for consideration that included "(1) $1; (2) payment of college tuition and associated expenses of the daughter of Ms. Rabb and [Benkovits]; and (3) granting an option to that daughter after graduation from college to buy for $1 half of Bandi's interest in his transportation business." Although there was some inconsistency relating to Rabb's affidavit, which referenced the transfer of assets as opposed to her interest in The Ohio Connection, Inc., the trial court recognized that Bandi claimed he was the 100 percent owner, that the daughter had a buy back option, and that there was no evidence of any transfer of assets until 2011, which was two years after the alleged oral contract for sale. As the trial court found, "Bandi claims that he transferred the assets from The Ohio Connection to Peter Bandi, Inc. Thereafter, Bandi alleges that he operated substantially the same business in this corporate entity as the 100% owner."

{¶ 6} The trial court acknowledged that the domestic relations court had found in a 2015 entry relating to the terms of the divorce that the oral contract for the sale of Rabb's stock in The Ohio Connection, Inc. to Bandi was unenforceable and that Rabb's interest in the businesses remained. Nevertheless, the trial court determined that collateral estoppel or issue preclusion did not apply because there was never a final order regarding these issues and the court had expressly reserved the issues until the final hearing occurred. However, in the 2016 agreed judgment entry of divorce, the named corporate entities were dismissed without prejudice. As a result, the trial court determined that collateral estoppel could not be relied upon by Benkovits in this matter.

{¶ 7} The trial court then determined that whether the 2009 oral contract for the sale of Rabb's interest in The Ohio Connection, Inc. to Bandi was fully performed so as to remove the agreement from the statute of frauds was an unresolved and contested issue. There was evidence to reflect that in exchange for Rabb's interest in The Ohio Connection, Inc., Bandi agreed to pay for the college tuition and expenses of Rabb's daughter, and that Bandi fulfilled his obligations and paid the tuition and expenses and provided spending money for Rabb's daughter. The trial court recognized that Bandi, believing he was the 100 percent owner after the 2009 sale, transferred the assets in 2011 to other corporations. Bandi maintained that Benkovits never had an interest in those corporations.

{¶ 8} The trial court proceeded to briefly express its views regarding the issues and the claims, bifurcated the issues remaining in the case, and ordered the

parties to conduct discovery and file dispositive motions with regard to "(1) [Benkovits's] right to avoid the 2009 sale of Ms. Rabb's interest in The Ohio Connection, Inc. including whether the statute of fraud applies, whether the statute of limitations applies, and (2) any claims [Benkovits] may have against Defendants arising out of the transfer of assets out of The Ohio Connection, Inc. to the various successor companies."

{¶ 9} On October 24, 2018, Rabb filed a motion to dismiss her from the action, which she later amended to a motion for summary judgment. Rabb argued that she has no interest, financial or otherwise, in any of the corporations or assets of any of the Bandi defendants. On October 26, 2018, the Bandi defendants filed a motion for summary judgment on the claims raised in the complaint. The Bandi defendants argued, in part, that Benkovits's claims accrued at the latest in July 2011, when Benkovits filed an amended complaint naming new party defendants in the divorce action. On October 29, 2018, Benkovits filed a motion for summary judgment on his complaint, in which he argued his claims accrued in February 2016 when the judgment of divorce was entered because he "could not know of the damages he incurred until a determination was made of his relationship to the business entities."

{¶ 10} On December 17, 2018, the trial court granted the motions for summary judgment of the Bandi defendants and Rabb, and the court denied Benkovits's motion. The trial court found that it lacked jurisdiction over Count 2 for financial misconduct with marital assets and Count 9 for frivolous conduct, and that

all the other claims raised in the complaint were barred by the applicable statute of limitations. The trial court found that the discovery rule did not apply to a number of the claims, and for the claims to which it did apply, the discovery date was no later than September 30, 2011, which is when Benkovits became aware of all the material facts surrounding the transfer of Rabb's interest in The Ohio Connection, Inc. to Bandi and the subsequent formation of Peter Bandi, Inc. The trial court also determined that the savings statute did not apply and that equitable estoppel and equitable tolling are unavailable. Additionally, the trial court denied Benkovits's motions to amend the complaint, finding a claim for breach of fiduciary duty would also be barred by the statute of limitations. Because the trial court found the claims were barred, the trial court did not address the parties' arguments pertaining to the merits of the claims. Finally, the trial court determined that because of the judgment entry of divorce, the claims against Rabb were subject to res judicata. An initial appeal from the trial court's decision was dismissed for a lack of a final appealable order because the counterclaims were not resolved.

{¶ 11} On February 13, 2019, Benkovits filed a motion for summary judgment on the Bandi defendants' counterclaims. The trial court granted the motion on January 23, 2020, stating in part that because of the uncertainty created by the domestic relations court in describing the marital interest that Rabb owned as "whatever interest that may be," that Benkovits had the right to institute actions to enforce rights he legitimately believed he had.

{¶ 12} A timely appeal and cross-appeal have now been filed. Benkovits has appealed the trial court's decision to grant summary judgment in favor of the defendants on his claims. The Bandi defendants have appealed the trial court's decision to grant summary judgment in favor of Benkovits on their counterclaims.

**Law and Analysis**

{¶ 13} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

{¶ 14} We shall begin by addressing Benkovits's assignments of error under which he challenges the trial court's decision to grant summary judgment in favor of the defendants on his claims by (1) refusing to accept the rulings in the domestic relations action, issuing a conflicting decision on jurisdiction, and finding the statute of limitations had run on Benkovits's claims, and (2) arbitrarily deciding jurisdictional issues between the domestic relations division and general division of the common pleas court.

{¶ 15} Benkovits argues the trial court erred by disregarding rulings of the domestic relations court, which found he had, as marital property, an interest in the

subject entities, though the interest was not determined. He further claims that although the domestic relations court had rejected the purported sale of Rabb's stock and found she retained an interest in the businesses, the trial court in this action required the parties to relitigate the issue and ultimately found Benkovits's claims were barred by the applicable statutes of limitations. Benkovits argues the trial court never decided what the interest is that was awarded to him in the domestic relations action. He further states that an appeal from the domestic relations action was withdrawn, and therefore he claims relitigation of issues decided in the domestic relations action are barred by res judicata.

{¶ 16} The doctrine of res judicata "involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "Under the doctrine of res judicata, 'a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them.'" *Jones v. Wainwright*, 162 Ohio St.3d 491, 2020-Ohio-4870, 165 N.E.3d 1253, ¶ 6, quoting *Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, 43 N.E.3d 385, ¶ 7. "Issue preclusion 'prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit.'" *State ex rel. Jefferson v. Russo*, 159 Ohio St.3d 280, 2020-Ohio-338, 150 N.E.3d 873, ¶ 9, quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994).

{¶ 17} Contrary to Benkovits's argument, the issue of Rabb's interest in the subject entities was not resolved by the domestic relations court. Although the domestic relations court found Rabb's interest to be marital property, it never determined the percentage, value, or extent of Rabb's interest in the subject entities. In the 2016 agreed judgment entry of divorce, Rabb waived "any interest in The Ohio Connection, Peter Bandi, Inc., The Ohio Connection, Inc., and Peter Bandi, LLC" and her marital interest was awarded to Benkovits, "whatever interest that may be." Also, although the domestic relations court issued a ruling in October 2015 that set forth terms of the divorce and found that Rabb possessed a marital interest in the various businesses, the final judgment entry of divorce stated that Rabb denied having any interest in the subject entities. Further, Peter Bandi and the named business entities were voluntarily dismissed from the domestic relations action. Benkovits agreed to the dismissal of these parties, without a final determination of Rabb's interest in the subject entities. Bandi Investment, L.L.C., Cleveland Transportation, Inc., and Barr Auto Body Company were never parties to that case. Because there was never a final judgment rendered upon these issues against Bandi, the named business entities, or their privies, the doctrine of res judicata does not apply in this action.

{¶ 18} Accordingly, the trial court in this matter was not required to accept the October 2015 ruling from the domestic relations court. The trial court found that Rabb sold her interest in The Ohio Connection, Inc. to Bandi in 2009 and that Peter Bandi, Inc. acquired "whatever The Ohio Connection, Inc. had" at the latest in

July 2011. Through the causes of action raised in this case, Benkovits claimed that his marital property interest was affected and that he suffered damages by the defendants' alleged wrongful conduct toward the business ventures. The trial court determined it lacked jurisdiction over two of the claims and found the other claims were barred by the applicable statutes of limitations.

{¶ 19} Benkovits challenges the trial court's decision to dismiss his claim to determine his interest in the subject entities. He argues the discovery rule should be applied in this matter and asserts he did not become aware of his right to his interest in The Ohio Connection and the related business entities until the February 18, 2016 judgment of the domestic relations court.

{¶ 20} "'Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed.'" *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 21, quoting *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998). However, when application of the discovery rule is appropriate, "the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Id.*, citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 90, 447 N.E.2d 727 (1983). When applicable, the discovery rule may be invoked where the injury complained of does not manifest itself immediately and fairness necessitates allowing the assertion of a claim when the discovery of the injury occurs beyond the statute of limitations. *See Kobal v.*

*Edward Jones Secs.*, 8th Dist. Cuyahoga No. 109753, 2021-Ohio-1088, ¶ 36, citing *Cristino v. Admr.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 40 (10th Dist.).

{¶ 21} In seeking a determination of his interest in the business entities under Count 1, Benkovits must show that he is entitled to avoid the 2009 oral contract for the sale of Rabb's interest to Bandi. Benkovits claims the oral contract was voidable and unenforceable. Pursuant to R.C. 2305.07, a claim upon a contract not in writing must be brought "within six years after the cause of action accrued." The discovery rule does not apply to a breach of an oral contact claim. *Pomeroy v. Schwartz*, 8th Dist. Cuyahoga No. 99638, 2013-Ohio-4920, ¶ 39-40. Indeed, "no Ohio court has ever applied the discovery rule to a claim for a breach of contract." *Schmitz v. NCAA*, 2016-Ohio-8041, 67 N.E.3d 852, ¶ 16 (8th Dist.). Also, although Benkovits argues that he was not aware of his right to his marital interest until the 2016 judgment entry of divorce, we decline to apply the discovery rule to extend the time limitations. *See Kobal* at ¶ 36-37. Because the oral contract for the sale of Rabb's interest to Bandi was entered in 2009, the breach of oral contract claim, which challenges the enforceability of the contract, is barred by the statute of limitations.

{¶ 22} Benkovits's claims for financial misconduct with marital assets, tortious interference with marital contract,[5] conversion, and civil conspiracy, as well as any claim for breach of fiduciary duty, all appear to be subject to the four-year

---

[5] The discovery rule is inapplicable to a claim for tortious interference with contract. *Casciani v. Critchell*, 1st Dist. Hamilton No. C-140338, 2015-Ohio-977, ¶ 15; *Porter v. Probst*, 2014-Ohio-3789, 18 N.E.3d 824, ¶ 22 (7th Dist.).

limitations period under R.C. 2305.09.  Also, in regard to the tortious interference claim, amatory actions have been abolished in Ohio pursuant to R.C. 2305.09. Benkovits's claim for a pattern of corrupt activity is subject to either the four-year limitations period under R.C. 2305.09 or the five-year limitations period under R.C. 2923.34(J).  These claims, as well as the claims for embezzlement and theft, are all barred by the applicable statutes of limitations.

{¶ 23} To the extent the discovery rule applies to some of the claims, our review of the record shows that Benkovits was aware that Rabb had sold her interest in The Ohio Connection, Inc. to Bandi in 2009 and that Benkovits became aware of the relevant facts underlying his claims no later than September 30, 2011.  As the trial court determined,

> [r]easonable minds can come to but one conclusion:  For the purpose of the statute of limitations discovery rule, Plaintiff was aware of all of these facts no later than September 30, 2011, having filed in July 2011 an amended complaint in the Domestic Relations Court alleging unlawful transfer of Defendant Rabb's interest in the Bandi Defendants and seeking the appointment of a receiver to trace and collect these assets from Bandi, Inc. dba The Ohio Connection.

However, Benkovits did not file his complaint in this case until November 16, 2016, which was more than five years after he knew or ought to have known of his potential claims and was beyond the applicable statutes of limitations.

{¶ 24} Insofar as Benkovits asserts that Rabb's sale of stock to Bandi was not valid and that a constructive trust was formed with regard to the transferred assets, it does not appear the constructive-trust issue was raised in the trial court.  A claim for a constructive trust is a remedy, not an independent cause of action.  *Kobal*, 8th

Dist. Cuyahoga No. 109753, 2021-Ohio-1088, at ¶ 14, citing *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 58 (8th Dist.). Under Ohio law, "'[i]f the cause of action in which imposition of a constructive trust is sought as a remedy is barred by a statute of limitation, the imposition of a constructive trust is likewise barred.'" *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 40, quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172, 297 N.E.2d 113 (1973).

{¶ 25} Benkovits next asserts that even if he is subject to the six-year statute of limitations on a sale not in writing that occurred in 2009, the doctrine of equitable tolling should be applied because he was diligently and lawfully pursuing his rights and the domestic relations court had disavowed a sale occurred. "[E]quitable tolling is to be applied sparingly and only in exceptional circumstances." *McCualsky v. Appalachian Behavioral Healthcare*, 2017-Ohio-8841, 100 N.E.3d 1049, ¶ 18 (10th Dist.), citing *Byers v. Robinson*, 10th Dist. Franklin No. 08AP-204, 2008-Ohio-4833, ¶ 56. "'[It] is only available in compelling cases that justify a departure from established procedure.'" *Id.*, quoting *Sharp v. Ohio Civ. Rights Comm.*, 7th Dist. Mahoning No. 04 MA 116, 2005-Ohio-1119, ¶ 11. "A litigant seeking equitable tolling must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her way and prevented timely action." *McCualsky* at ¶ 18, citing *In re Regency Village Certificate of Need Application*, 10th Dist. Franklin No. 11AP-41, 2011-Ohio-5059, ¶ 37. We recognize Benkovits received Rabb's marital interest in the subject business entities in the divorce action, albeit undetermined, and he believes the trial court herein erred by failing to

determine his interest. However, Benkovits does not identify any misrepresentation of fact that prevented him from filing the claims raised in this matter. Further, the record shows he was aware of his claims during the domestic relations action and he agreed to the judgment entry of divorce, which did not define his interest and dismissed the named business entities. That Benkovits's claims were ultimately barred in this case was not the result of any injustice, but rather, the failure to pursue the claims in a timely manner. We do not find the circumstances in this case to warrant application of equitable tolling.

{¶ 26} We also find the trial court properly determined that it lacked jurisdiction over Benkovits's claim for financial misconduct with marital assets, which purportedly relates to the division of marital property, and his claim for frivolous conduct, which pertains to an appeal that was filed from the domestic relations action. However, Benkovits argues that the trial court erred by finding it lacked jurisidiction over Count 2 for financial misconduct with marital assets because he had been awarded an undetermined interest in the subject business entities. The trial court aptly recognized that the assets of The Ohio Connection, Inc. are not marital assets and Benkovits has cited no authority that would allow this type of action to be maintained.

{¶ 27} We find no merit to any other arguments presented by Benkovits, and we decline to address arguments regarding the merits of the claims, which were not addressed by the trial court in the first instance. We overrule all the assignments of error raised by Benkovits.

{¶ 28} Next, we address the Bandi defendants' cross-appeal, which challenges the trial court's decision to grant summary judgment in favor of Benkovits on their counterclaims for tortious interference and frivolous conduct.

{¶ 29} Under their first cross-assignment of error, the Bandi defendants argue summary judgment was not warranted on the counterclaim for tortious interference because genuine issues of material fact remain regarding Benkovits's justifications for bringing the claims outside their respective statutes of limitations and because he pursued those claims knowing he had no ownership interest in appellees' business entities. The Bandi defendants argue that determining whether Benkovits is liable for tortious interference requires the trier of fact to determine whether the elements of tortious interference were met by the evidence. Among other arguments, they claim that Benkovits pursued litigation in an attempt to improperly obtain an interest in the business entities.

{¶ 30} Under the second cross-assignment of error, the Bandi defendants argue summary judgment was not warranted on the counterclaim for frivolous conduct because they claim Benkovits engaged in frivolous conduct by bringing claims outside their respective statutes of limitations and when no legal or factual basis existed to support those claims. They argue that whether a party's actions constitute frivolous conduct is a factual determination. Among other arguments, they claim that Benkovits was aware he was litigating meritless claims, he failed to reasonably investigate his claims, and his claims were not warranted under existing law.

{¶ 31} Our review reflects that the counterclaim for tortious interference alleges that neither Rabb nor Benkovits has any financial claim or ownership interest in the Bandi defendants, that Benkovits's claims alleging a property interest in the defendant Bandi entities are unfounded, and that the Bandi defendants were financially damaged by having to defend the claims brought by Benkovits. The claim for frivolous conduct alleges that Benkovits's conduct in filing his complaint and motions was meant to harass the Bandi defendants and that the claims were made with wanton disregard for the truth.

{¶ 32} Among the elements of the tort of tortious interference with contract is a "lack of justification" for the interference. *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999), citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), paragraph one of the syllabus. To establish the element of lack of justification, there must be "proof that the defendant's interference was improper." *Id.* Similarly, to establish tortious interference with a business relationship, a plaintiff must establish a lack of justification or a lack of privilege that would render the interference improper. *See Vogel v. Albi*, 1st Dist. Hamilton No. C-190746, 2020-Ohio-5242, ¶ 37; *Smith v. Natl. W. Life*, 2017-Ohio-4184, 92 N.E.3d 169, ¶ 20-21 (8th Dist). "'[O]ne is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract.'" *Smith* at ¶ 21, quoting *Pearse v. McDonald's Sys. of Ohio, Inc.*, 47 Ohio

App.2d 20, 25, 351 N.E.2d 788 (10th Dist.1975); *see also Hicks v. Cadle Co.*, 2019-Ohio-5049, 150 N.E.3d 381, ¶ 100 (11th Dist.).

{¶ 33} In granting Benkovits summary judgment on the counterclaims, the trial court recognized that because of the uncertainty created by the domestic relations court in describing the marital interest of Rabb in the business entities that was awarded to Benkovits as "whatever interest that may be," Benkovits had the right to institute this action "to enforce rights he legitimately believed he had." We agree.

{¶ 34} Our review shows that Benkovits demonstrated he acted in good faith by bringing this action to determine his interest, whatever it might be, and by asserting claims in relation to a purported legally protected interest of his own. The Bandi defendants failed to set forth sufficient facts to demonstrate Benkovits acted without justification or privilege so as to demonstrate a genuine issue on their tortious interference claim. That Benkovits's claims were ultimately found barred by the applicable statutes of limitations, or were otherwise dismissed, does not render Benkovits's conduct or the alleged interference improper in this matter. As the trial court determined, "there was justification for plaintiff bringing the claims and asserting in the pleadings he had an ownership interest in the Bandi defendants." Accordingly, we uphold the trial court's decision to grant summary judgment in favor of Benkovits on the tortious interference claim.

{¶ 35} Next, we address the frivolous conduct claim. [6]  R.C. 2323.51(B)(1) provides in relevant part:

> at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal.

{¶ 36} Generally, a trial court's decision on whether to award sanctions under R.C. 2323.51 will not be reversed absent a showing of an abuse of discretion. *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, 9 N.E.3d 1016, ¶ 10, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11.  Pursuant to R.C. 2323.51(A)(2)(a), "'frivolous conduct' includes conduct by a party to a civil action that is 'not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.'"  *Bell* at ¶ 12, quoting R.C. 2323.51(A)(2)(a)(ii).

---

[6] We recognize there has been some split in authority on whether a claim for frivolous conduct may be raised in a counterclaim instead of a motion. *See Vogel*, 1st Dist. Hamilton No. C-190746, 2020-Ohio-5242, at ¶ 53 (finding R.C. 2323.51(B)(1) "clearly and unequivocally provides that a request for costs and fees based on frivolous conduct should be made by motion.")  This court has previously considered counterclaims for frivolous conduct. *See, e.g., O'Toole v. Hamman*, 8th Dist. Cuyahoga No. 109193, 2020-Ohio-4753, ¶ 13-22; *Scheel v. Rock Ohio Caesars Cleveland*, L.L.C., 8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 16 (recognizing several "Ohio courts have recognized requests for sanctions under R.C. 2323.51 may be brought by counterclaim as well as by motion.")  Without deciding this issue herein, we find that in either event, the trial court's decision to grant summary judgment in favor of Benkovits on this claim was proper.

{¶ 37} As this court recognized in *O'Toole*, "R.C. 2323.51 was not intended to punish mere misjudgment or tactical error." *O'Toole* at ¶ 20, citing *Turowski v. Johnson*, 70 Ohio App.3d 118, 123, 590 N.E.2d 434 (9th Dist.1991). "Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action." *Id.*, citing *Turowski v. Johnson*, 68 Ohio App.3d 704, 706, 589 N.E.2d 462 (9th Dist.1990). "'R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct.'" *Striker* at ¶ 21, quoting *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, 896 N.E.2d 191, ¶ 8 (10th Dist.).

{¶ 38} In this matter, the record demonstrates that Benkovits acted in good faith reliance on the judgment entry of the domestic relations court in filing this action. As determined by the trial court, Benkovits's conduct in bringing the claims in this action "was done for proper purpose, was warranted, had evidentiary support, and was reasonable." We do not find the trial court abused its discretion, and we uphold the trial court's decision to grant summary judgment on the counterclaim for frivolous conduct. We find no merit to any other arguments raised by the Bandi defendants regarding their counterclaims and overrule the cross-assignments of error presented in their cross-appeal.

{¶ 39} Judgment affirmed.

It is ordered that appellant/cross-appellee and appellees/cross-appellants share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
EMANUELLA D. GROVES, J., CONCUR